OTTO IHL, Appellant, v. THE BANK OF SAINT JOSEPH, Respondent.

Kansas City Court of Appeals, May 5, 1887.

1. BANKER AND DEPOSITOR—DUTIES AND OBLIGATIONS AS TO DEPOSITS AND APPROPRIATION OF THEM.—The banker is not justified in refusing to honor the depositor's check because he knows or believes that the check is an appropriation of funds to a person, or for a purpose, to whom, or for which, the depositor is not lawfully authorized to appropriate these funds. * * * , But if the depositor seeks to pay *his own debt* to the banker, by the appropriation of funds to his credit in a *fiduciary* capacity, with the banker, *then* the banker is affected with knowledge of the unlawful character of the appropriation, and would be compelled to refund.

2. ——— PAYMENT OF CHECKS—FUND TO CREDIT AS TRUSTEE NOT PAYABLE ON INDIVIDUAL CHECK.—Where money is credited in a bank to the account of a person, *as trustee*, the bank would have no authority to pay out the money belonging to that fund, on checks signed by the same person by his individual name only.

3. PRACTICE—READING OF DEPOSITION OF A WITNESS PRESENT IN COURT.—The deposition of a witness, *present in court*, cannot be read as original evidence, and, by having the same person examined *as a witness*, the person calling him loses the right to read the deposition. The statute in relation to depositions contemplates the *absence* of the witness; it does not authorize the examination of the witness, *and* the reading of his deposition to supplement and substantiate the testimony elicited on his examination.

APPEAL from Platte Circuit Court, HON. GEORGE W. DUNN, Judge.

*Reversed and remanded.*

Statement of case by the court.

The petition in this case was as follows: ``Plaintiff states that defendant is a corporation organized under the laws of the state of Missouri, and is now, and was, at all times hereinafter named, engaged in business in

VOL. xxvi—9

said county as a banking institution; that, on the twentieth day of July, 1881, plaintiff drew his draft upon Vergho, Ruhling & Company, of Chicago, Illinois, payable to defendant's order, for the sum of five hundred dollars, and delivered the same to defendant; and, also, upon the twenty-first day of July, 1881, drew another draft upon said Vergho, Ruhling & Company, payable to defendant's order, for the sum of one thousand dollars, and delivered the same to defendant; that both of said drafts were so delivered to defendant for collection, and were paid to, and collected by, defendant, for, and on account of, plaintiff; that defendant, at the time of the delivery aforesaid, agreed to pay plaintiff, on the proceeds of said drafts, interest at the rate of six per cent. per annum, from the time the same should be paid to defendant, and during the time the same should be deposited with defendant; that the sum of fifteen hundred dollars, as aforesaid, was paid to defendant on the twenty-fifth day of July, 1881, and has been deposited with the defendant from that date until the present time; that, on the —— day of ——, 1882, defendant paid to plaintiff ninety dollars—one year's interest on said deposit; that, on the —— day of ——, 1883, plaintiff demanded payment of said deposit, together with interest, except the sum of ninety dollars, paid as aforesaid, and defendant failed and refused to pay the same, and said deposit is now due and unpaid to plaintiff; wherefore, plaintiff prays judgment for the sum of fifteen hundred dollars, with interest, as aforesaid, from the twenty-fifth day of July, 1881, after allowing said payment of ninety dollars, and his costs in this behalf."

The answer was as follows: "Defendant, for amended answer, denies each and every allegation contained in plaintiff's petition. For further defence, defendant charges the facts to be, that, on or about the twenty-first day of July, 1881, Christian Frenger deposited to his credit in the defendant bank, the drafts mentioned in plaintiff's petition, with instructions to

defendant to forward the same to Chicago for collection, and to receive the proceeds thereof, and when so received by defendant, to place the same to the credit of said Frenger, in defendant bank; that defendant, at the time aforesaid, received said drafts from said Frenger, under the instructions, aforesaid, given by him, and, in pursuance to said instructions, forwarded the same to Chicago for collection, and, on the twenty-fifth day of July, 1881, received the proceeds of said draft, and placed the same to the credit of said Frenger, in said defendant bank, and on the day last aforesaid, paid out the same to said Frenger. Defendant having fully answered, asks to be discharged with its costs."

The reply was a general denial of the new matter set up in the answer. The plaintiff was the surviving partner of the firm of Hoffman & Ihl, and wished to make an administrator's bond, so that he might administer upon the estate of said partnership.

The evidence introduced by the plaintiff tended to show that the plaintiff and Christian Frenger, the latter being, at that time, the paying and receiving teller of the defendant bank, made an arrangement to the effect that Frenger would execute said bond, as one of three sureties for plaintiff, if the plaintiff would deposit five hundred dollars in the bank to indemnify Frenger against loss as such surety, and would permit the money to remain there until the plaintiff should be discharged as administrator. The evidence of plaintiff also tended to prove that the agreement was, that he was to deposit the money in the bank to his own credit, and not to that of Frenger. But the plaintiff introduced in evidence an instrument, termed by him a definition of trust, executed by himself and Frenger, some time after the making of said agreement, and after the deposit of the drafts mentioned in the petition, in the defendant bank, and the collection of said drafts by the bank. Said instrument was as follows:

"Whereas, Christian Frenger, Carl Weigel, and

Ewald Padberg, are securities upon the bond of Otto Ihl, as administrator of the partnership estate of Hoffman & Ihl, in the probate court, in and for Buchanan county, Missouri; and, whereas, in order to indemnify said Frenger, Weigel, and Padberg, against loss on account, or growing out, of said bond, said Otto Ihl has deposited in the Bank of St. Joseph, the sum of fifteen hundred dollars, in the name of C. Frenger, as trustee. Now these presents witnesseth, that said sum of money shall remain on deposit in said bank, for the purpose aforesaid, until the said securities are, or shall be, finally discharged from any and all obligations, or liability growing out of said administration bond, and when finally discharged, said money shall be repaid to said Otto Ihl. But, in the event that said securities shall be required, or shall become liable, to pay any money, on account of having executed said bond, the aforesaid money of fifteen hundred dollars may be applied to indemnify them against any such loss or payment to the extent necessary for that purpose.

"Signed in duplicate, August 2, 1881.

"OTTO IHL,
"CHRISTIAN FRENGER.'

From said instrument, and other evidence introduced by plaintiff, the jury might have inferred that the agreement between plaintiff and Frenger was, that the plaintiff would deposit in the bank the sum of five hundred dollars, to the credit of Frenger, as trustee.

The plaintiff's evidence tended to further prove, that, in pursuance of his agreement with Frenger, he drew the following draft:

"$500.            ST. JOSEPH, Mo., July 20, 1881.

"Pay to the order of the Bank of St. Joseph, five hundred dollars, value received, and charge to the account of                              OTTO IHL.
"To Vergho, Ruhling & Co., Chicago, Ill."—

And handed the same over the counter in the bank to Frenger.

The plaintiff's evidence also tended to show that, next day, plaintiff made an arrangement with Messrs. Padberg and Weigel, by which they agreed to execute the said bond as his other sureties, if the plaintiff would deposit in the defendant bank the sum of one thousand dollars, to indemnify them against loss as such sureties, and would keep the money in said bank until he should be discharged as such administrator; and that, in pursuance of such agreement, he drew the following draft:

"$1,000. ST. JOSEPH, Mo., July 21, 1881.

"Pay to the order of the Bank of St. Joseph, one thousand dollars, value received, and charge to the account of . OTTO IHL.

"To Vergho, Ruhling & Co., Chicago, Ill."—

And handed the same to Frenger in the bank.

The plaintiff's evidence tended to show that the drafts were delivered to Frenger as the receiving teller of the bank, for collection by the bank, to be credited, when collected, to the plaintiff's account. But, from the so-called definition of trust, and the other evidence, the jury might have reasonably inferred that the drafts were deposited in the bank by plaintiff, for collection by it, to be credited to the account of Frenger, as trustee.

Upon each of the drafts were the following endorsements:

"*First endorsement:* Pay L. J. Gage, cashier, or order, for collection, on account of the Bank of St. Joseph. GEORGE C. HULL, Cashier."

"*Second endorsement:* Paid.

"L. J. GAGE, Cashier."

The drafts were entered upon the "collection register" of the defendant bank, were duly collected, as indicated by the above endorsements, and the proceeds of the drafts were credited to the account of "C. Frenger" by the bank, in pursuance to Frenger's directions to that effect.

Frenger was the receiving and paying teller of the bank at the time, and it was his duty to receive drafts for collection by the bank. On the day on which the credit was given to Frenger, he drew the entire amount thereof out of the bank, and converted the same to his own use. There was no evidence of collusion between the bank and Frenger in the latter's misappropriation, or that the bank realized any profit or benefit in any way therefrom.

Some time after these transactions, with the consent and approval of his sureties, the plaintiff made a demand on the defendant bank for the money. The bank declined to pay.

Frenger testified as a witness for the bank. His testimony tended to prove that the agreement between him and plaintiff was, that plaintiff should place five hundred dollars in his hands, to be left with him until the estate was finally settled, and the administrator discharged, and that he (Frenger) was to pay six per cent. interest per annum on the money, while it remained in his hands. Said testimony tended also to prove that the agreement between plaintiff and Messrs. Padberg and Weigel, was to the same effect. Said testimony tended to prove, further, that the drafts were handed to him by plaintiff with instructions for him to have the same collected, and for him to hold the proceeds in pursuance of the said agreements.

The defendant had, prior to the trial, taken the deposition of Frenger, to be used in this case. At the close of the evidence, introduced by the plaintiff in rebuttal, the defendant offered said deposition in evidence. To which offer the plaintiff objected on the grounds that Frenger was present, and had testified as a witness. The court overruled the objections, and permitted the deposition to be read in evidence. The attendance of Frenger had, it seems, been secured by means of an attachment. At the close of Frenger's examination, he was discharged by the court from custody under the attachment.

On this state of the proof the court gave for the defendant, among others, the following instructions:

"1. The court instructs the jury that, if they find, from the evidence, that, on or about. the twenty-first or twenty-fifth day of July, A. D., 1881, the plaintiff, Otto Ihl, or Christian Frenger, by his direction, deposited in the Bank of St. Joseph, either the drafts mentioned in the evidence, or the proceeds thereof, to the credit of Christian Frenger, individually, or as trustee, and that, afterwards, said Christian Frenger drew said proceeds out of said bank, then they must find for the defendant."

"2. The court instructs the jury that, if they find, from the evidence, that, on or about the twenty-first or twenty-fifth day of July, A. D., 1881, the plaintiff, Otto Ihl, placed in the hands of Christian Frenger, the drafts mentioned in the evidence, with instructions to forward the same, through the Bank of St. Joseph, for collection, and hold the proceeds thereof for the purpose of indemnifying said Frenger, Weigel and Padberg, as his securities, against loss on the bond of said Ihl, mentioned in the evidence, and that said Frenger, Weigel and Padberg, at or about said date, signed the bond aforesaid, as securities of said Ihl, on said bond, then the jury must find for defendant, even if they do find, from the evidence, that said Frenger was teller of the defendant bank at the time."

While the jury were deliberating as to their verdict, it was agreed, by both parties, "that the jury might have, in their deliberation upon their verdict, all papers in the case, including the pleadings, *depositions*, and papers read in evidence," and, accordingly, all said papers were sent to the jury.

From a judgment in favor of the defendant, the plaintiff has appealed to this court.

JAS. F. PITT, for the appellant.

I. Defendant's *first* instruction is erroneous, in

that it tells the jury that if they find that Ihl, or Frenger, by Ihl's direction, deposited, in the bank, the drafts, or proceeds thereof, to the credit of Christian Frenger, *as trustee*, and that, afterwards, *Frenger drew said proceeds out of said bank*, then they must find for the defendant. *This is not the law*, for it *overlooks* the fact that, where money is held by a bank, *with notice* of the *conditions of trust*, under which it is deposited, and the bank pays it out knowingly, in *violation of that trust*, the bank is liable to the *cestui que trust*. *In re Gross*, 6 Law. Rep. C. 632; *Bodenham v. Hoskins*, 13 Eng. L. and E. 222; Morse on Banks and Banking [2 Ed.] 37, 45; Perry on Trusts, sect. 840. The *defence* was, that Frenger received the drafts, "individually," the proceeds to be deposited by him to his private account " in the defendant bank," but the *proof* in support was, that he being an officer of the bank, received the drafts, "as trustee," and, in that capacity, deposited them in the defendant bank, for collection; that they were collected for him, as trustee, and the proceeds paid to him individually while acting officially, with full knowledge, upon defendant's part, of the trust, and its violation at the instance of its own officer. Any act, done by the *teller of a bank*, within the scope of his powers and duties, *is, in law, the act of the bank, itself*. "Whether these be right or wrongful, innocent third parties have the right to regard them in this light, and the law will thus construe them. In like manner, *knowledge obtained by the agent in his official capacity*, and within the scope of his agency, will affect the corporation." Morse on Banks and Banking, [2 Ed.] 79, 80. The instruction conforms to the answer in the use of the word, "individually," and to the proof in the words, " or as trustee." Its vice is a departure, the interposition of a new defence.

II. The *second* instruction, given for the defendant, entirely *takes from the jury* their right to pass on the question at issue, as to whether the drafts were handed

to Frenger, as teller of the bank, in his official capacity, and for the bank to forward for collection, and for the bank to hold the proceeds for the purpose of *securing* Ihl's sureties. This was the vital question in the case. It also gives prominence to unimportant facts, about which there is no contest, and is *misleading*. *Clarke v. Kitchen*, 52 Mo. 316; *Scoville v. Glassner*, 79 Mo. 449; *Coe v. Griggs*, 76 Mo. 619; *Donahoe v. Railroad*, 83 Mo. 560.

III. The court *erred* in permitting defendant to *read the deposition* of its witness, Frenger, in rebuttal, although plaintiff read in evidence an exhibit attached to the deposition. The law requires certain papers to be attached as exhibits for convenience of reference and identification. A failure to comply with it is a matter which addresses itself to the trial court upon the offer of either the deposition or the exhibits. *Tyrrell v. Railroad*, 7 Mo. App. 294. Exhibits are no part of a deposition, in the sense of being a part of what the witness says. They are only papers, etc., about which he testifies, which may, or may not, be admissible, even if attached and property identified. *Lobdell v. Marshall*, 58 N. H. 342; *Marvin v. Raigan*, 66 Mass. 132; *Railroad v. Quick*, 61 Pa. St. 328. It is not necessary that they should be either attached, or returned at the time. "If there is clear evidence to identify papers as those referred to in the depositions taken by the commissioners, they may be received in evidence, though not returned with the depositions." Weeks on Depositions, sect. 361. Depositions are *secondary* evidence; and where the witness *is present* at the time his deposition is offered, or has been present during the trial, with *the knowledge* of the party, and could have been retained, or is absent at that time by consent, connivance or collusion of the party offering the deposition, it can not be read. *Carter v. Prior*, 8 Mo. App. 577; *Dunn v. Dunn*, 11 Mich. 284; *Insurance Co. v. Walker*, 58 Ala. 290; *Sexton v. Brock*, 15 Ark. 345. Where a deposition

has been read, the witness can not afterwards be examined *orally* at the same trial. *The State v. King*, 74 Mo. 614. And it was, perhaps, never known that a party might use both his witness and his witness' deposition, except by consent.

IV. A judgment, which has not substantial evi dence to support it, will be reversed on appeal. *Lionberger v. Pohlman*, 16 Mo. App. 392; *Taylor v. Fox*, 16 Mo. App. 427.

GREEN & BURNES, for the respondent.

I. The question, whether the money sued for was *deposited with the bank* or *with Frenger*, was *fairly submitted to the jury*, and they were told, by plaintiff's first instruction, that they must find for the plaintiff, if it was deposited with the bank. The jury *passed upon the question*, and this court can not interfere now, to weigh the evidence, to see if their conclusion was right, under the evidence. The *instructions*, taken together, presented the *law of the case*.

II. If the money was deposited *with the bank*, by Ihl, or Frenger, by Ihl's direction, *in Frenger's name*, to be used by Frenger during his liability on the bond of Ihl, and *Frenger drew it out* and used it, plaintiff can not recover.

III. If *Ihl* or *Frenger*, by *his direction*, deposited the money in the bank in *Frenger's name as trustee*, and Frenger drew it out and used it, the bank is not liable. *Lund v. Seamans*, 37 Barb. (N. Y.) 129.

IV. Notice to an *agent* is only notice to his *principal* when it is obtained in the discharge of his duty as *his agent;* not when the agent is acting *for another party* and not his principal. *Farrell v. Bank*, 12 Ala. 502; *Winchester v. Vallet*, 4 Maryland, 231; *Bank v. Payne*, 25 Conn. 449; *Ford v. French*, 72 Mo. 250; 2 Hill (N. Y.) 262.

V. The *deposition* of Frenger was properly admitted, as corroborating what he had sworn to, and contra-

dicting plaintiff's rebuttal testimony. He had been attached as a witness, and had been discharged at the time of reading his deposition. There is no evidence that he was present in court. When the deposition was read .that objection was made in lower court, and overruled, and *presumably* because he was not present. It was sent into the jury room after their retirement, by agreement of both parties.

I.

HALL, J.—From the evidence in this case, the jury were at liberty to infer any one of the following states of facts in reference to the deposit of the drafts by the plaintiff, in the defendant bank: (1) That the plaintiff deposited the drafts with Frenger, as receiving teller of the bank, with instructions for the bank to collect the same and credit the proceeds to his, *plaintiff's,* account. (2) That the plaintiff thus deposited the drafts, with the instructions that the drafts be collected and the proceeds credited to the account of Frenger, as *trustee.* (3) That the plaintiff thus deposited the drafts, with instructions that the drafts be collected and the proceeds be credited to the account of Frenger, not *as trustee,* but simply as Frenger.

Under the first mentioned state of facts, the liability of the bank is clear, and is not disputed by the defendant. But, under the instructions of the court, the jury found against the existence of such a state of facts, and we need not notice further that particular phase of the case.

The deposit of the drafts by the plaintiff with the bank for collection, and the collection thereof by the bank, made the bank the plaintiff's debtor to the amount of the drafts thus collected. The plaintiff had the right to appropriate, by directions and instructions to that effect, the proceeds of the drafts to any account, and, therefore, the bank would have been relieved of any liability to the plaintiff, on account of the collection of the

drafts, by crediting the proceeds of the drafts in the manner directed by the plaintiff. It is conceded that the bank credited the proceeds of the drafts to the account of Frenger, as simply Frenger, that is, to Frenger's individual account. If the fact was, as set out in the third state of facts above, that the plaintiff directed this to be done, there was no liability on the part of the defendant, unless it was bound in law, under the facts of this case, to not only credit the proceeds of the drafts when collected, in the manner directed by plaintiff, but also to see to the proper appropriation of the proceeds of the drafts by the person to whose account they were thus credited.

We do not understand that any such obligation was imposed upon the bank by the law, under the facts of this case. Frenger was the bank's teller, and knew of the terms on which, and the objects for which, the deposit was made. But, in so far as concerns the carrying out of the terms of the trust or agreement between him and the plaintiff, he was acting solely for the parties to the agreement, and not at all within the scope of his agency or official duty as an officer of the bank. His knowledge was not the knowledge of the bank, either as to the terms of the trust agreement, or as to his intention in drawing the money out of the bank. Morse on Banks and Banking, 125, 133, and cases cited. Besides, if the bank properly credited the proceeds of the drafts to the individual account of Frenger, Frenger had the right, as against the bank, to draw the money out of the bank for the purpose of misappropriating it, although the bank knew of such purpose. This is true, because " the banker is not justified in refusing to honor the depositor's check, because he knows or believes that the check is an appropriation of funds to a person, or for a purpose, to whom, or for which, the depositor is not lawfully authorized to appropriate those funds. For, if the banker should look into this matter, he would make himself, improperly, a party to an inquiry between his customer

and a third party." Morse on Banks, etc., 37. The author in that connection, however, adds: "But if the depositor seeks to pay his own debt to the banker by the appropriation of funds to his credit in a fiduciary capacity with the banker, then the banker is affected with knowledge of the unlawful character of the appropriation, and would be compelled to refund." It is by force of this distinction, and the fact that, in this case, the defendant was in no wise benefited by the misappropriation of the money made by Frenger, that the authorities cited by the plaintiff's counsel on this point have no application.

Although the bank could have relieved itself of any liability on account of the collection of the drafts by crediting the proceeds to any particular account, in accordance with the plaintiff's instructions, it is, of course, clear that the bank would have been still indebted to the plaintiff in the amount collected on the drafts, if it credited such amount to an account other than the one to which plaintiff directed it to make such credit. If the plaintiff had directed the bank to credit the proceeds of the drafts to the account of A, and the bank had credited the proceeds of the drafts to the account of B, the bank would not have been thereby relieved of liability. The bank would have still owed to plaintiff the amount collected.

The difference between the individual account of Frenger and the account of Frenger, as trustee, is quite as great as the difference between the account of A, and the account of B. On checks signed by Frenger, individually, the bank would have had no authority to pay money credited to the account of Frenger, as trustee. Morse on Banks, etc., 293.

Hence, since it is conceded that the bank credited the proceeds of the drafts to the individual account of Frenger, we hold that it was error in the court to tell the jury, in the first instruction given for defendant, that, if the plaintiff deposited, in the bank, the drafts or their

proceeds to the credit of Frenger, as trustee, and that, afterwards, Frenger drew said proceeds out of the bank, they should find for the defendant.

We have thus far considered this case as if the plaintiff had given the drafts to Frenger, as receiving teller of the bank. We have done so, for the reason that it matters not whether the plaintiff gave the drafts to Frenger as such teller, or to Frenger in his individual capacity. Frenger received the drafts to be collected by the bank; the drafts were delivered to the bank for collection and were collected by it; the drafts were made by the plaintiff payable to the order of the bank; the bank had to know what disposition to make of the proceeds of the drafts when collected; the receiving teller of the bank was the officer authorized to receive the drafts for collection, and to learn what disposition to make of their proceeds; and, hence, whether the drafts were *given* to him as teller or not, when the bank received the drafts through him for collection he acted for the bank, and the knowledge had by him as to the proper disposition to make of the proceeds of the drafts was the bank's knowledge, because it pertained to a matter within the scope of his official duty, and as to which he acted officially.

Therefore, it being conceded that the proceeds of the drafts had been credited to the individual account of Frenger, and that Frenger had drawn the money out of the bank, and there being no evidence tending to show that the bank had received any of the money, or had been in any manner benefited by Frenger's misappropriation of the trust money, the question was, did the plaintiff direct that the proceeds of the drafts be credited simply to the account of Frenger? If the plaintiff gave such direction, under the facts of this case, the bank was not liable. But, if, on the contrary, the plaintiff directed that the proceeds of the drafts be credited to his own account, or to the account of Frenger, as trustee, the bank, under the facts of this case, was liable.

On another trial this issue of fact should be plainly and clearly submitted to the jury, disembarrassed of extraneous matters tending to confuse them. The second instruction which was given for the defendant should not, for this reason, be given again.

## II.

The deposition of a witness present in court cannot be read as original evidence. It is true that the record states that Frenger, at the conclusion of his testimony, was discharged from custody under the attachment which had been served upon him, but it does not appear that he had been released from attendance upon the court as a witness. The trial was still in progress, he had been examined as a witness, he was still constructively in attendance as a witness, the objection was made that he was present; we think that if he was not, in fact, present the party offering the deposition in evidence should have made that fact appear.

The presumption, to be drawn from the action of the court in overruling the objection, is, not that the witness was not present, but is, that the objection, being true in fact, was unavailing in law. Besides, by having examined Frenger as a witness, the defendant lost the right to read his deposition in evidence.

The statute, in relation to depositions, contemplates the absence of the witness; it does not authorize the examination of the witness and the reading of his deposition to supplement and substantiate the testimony elicted on his examination.

The plaintiff, by consenting that the deposition might go to the jury room, did not waive his objection to the introduction of it in evidence.

Judgment reversed and cause remanded. All concur.