FONTAINE McCULLAM, Trustee in Bankruptcy of MASTERS LUMBER COMPANY, Appellant, v. THIRD NATIONAL BANK, Respondent.

St. Louis Court of Appeals.     Opinion Filed November 8, 1921.

1. **CORPORATIONS: Officers: Misapplication of Corporate Funds: Statute: Retroactive Operation.** Section 996, Revised Statutes 1919, defining liability of persons collecting checks in payment of debts, etc., does not affect a case wherein the facts occurred prior to the passage of the act.

2. **BANKRUPTCY: Suits by Trustees: Following Misapplied Corporate Funds: Conversion of Deposits: Evidence: Bank Without Knowledge: No Liability.** In an action by a trustee of a bankrupt corporation against a bank, seeking to recover money alleged to have been received by the bank at various times in various amounts. which money consisted of checks drawn on the funds of the corporation by its president and deposited in the bank in his individual name, facts and circumstances *held* to justify the referee in holding that the bank had neither actual nor constructive knowledge of the conversion or misappropriation of the deposits so made.

3. **BANKS AND BANKING: Corporations: Officers: Drawing Checks on Corporate Funds: Deposits in Individual Account: Conversion: Liability of Bank.** A bank, in the ordinary course of business.

McCullam v. Third Nat. Bank.

without any actual knowledge of conversion or without any further constructive or implied knowledge than the mere fact that a check drawn by an officer of a corporation on its funds is deposited in his individual account, does not become liable if it turns out that such deposit is a step in the conversion of the corporation's funds.

4. ————: ————: ————: ————: ————: Bank Without Notice: Not Required to Determine How Proceeds are Applied. Where the president of a corporation drew checks on its funds and deposited them with a bank to his individual account, while the bank could not receive and keep any of such funds in payment of a personal debt of the president to the bank without becoming liable, yet, where the bank had no notice, either actual or implied, that such deposits were a step in the conversion of the corporate funds by its president, it is not liable if it fails to determine that the proceeds of such checks deposited are properly applied to the affairs of the corporation.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. V. H. Falkenhainer*, Judge.

AFFIRMED.

*Frumberg & Russell* for appellant.

(1) The form and contents of the nineteen checks not introduced in evidence was sufficiently shown by the book entries of the Masters Lumber Company and the defendant. Clifford Banking Co. v. Donovan Com. Co., 195 Mo. 262. (2) In receiving the checks of the Masters Lumber Company the defendant had notice that the same were the property of the corporation and that S. M. Masters as president had no implied authority to use the same for his own benefit. Lee v. Smith, 84 Mo. 304; Clifford Banking Co. v. Donovan Com. Co., 195 Mo. 262; Blake v. Bank, 219 Mo. 644; Bank v. Edwards, 243 Mo. 553; Johnson v. Bank, 56 Mo. App. 257; Kitchens v. Teasdale Com. Co., 105 Mo. App. 463; St. Louis Charcoal Co. v. Lewis, 154 Mo. App. 548; Coleman v. Stocke, 159 Mo. App. 43; Bank

v. Orthwein Com. Co., 160 Mo. App. 369; Reynolds
v. Gerdelmann, 185 Mo. App. 176; Reynolds v. Whitt-
more, 190 S. W. 594; McCullam v. Buckingham Ho-
tel Co., 199 S. W. 417; Napoleon Hill Cotton Co.
v. Stix, 217 S. W. 323; O'Bannon v. Moerschel, 199
S. W. 1035. (3) Where a bank receives the negotiable
instruments of the principal and credits the same to
the individual account of the agent, it is liable for the
amount of the same, either as for a conversion or for
money had and received. Clifford Banking Co. v. Don-
ovan Com. Co., 195 Mo. 262; Bank v. Edwards, 243
Mo. 553; Bank v. Orthwein Com. Co., 160 Mo. App.
369; K. C. Casualty Co. v. Bank, 191 Mo. App. 287;
Strong v. Commonwealth Trust Co., 199 S. W. 1034;
Bank v. McPherson, 102 Miss. 852; Morison v. Bank
(1914), 3 K. B. 356.

*Jones, Hocker, Sullivan & Angert* and *Vincent L.
Boisaubin* for respondent.

(1) All items prior to July 19, 1912, were barred
by the Statute of Limitations. Sec. 1887, 1889, 1893,
R. S. 1909; Garrett v. Conklin, 52 Mo. App. 654, 658;
St. Charles Savings Bank v. Orthwein Inv. Co., 160
Mo. App. 369; Mabary v. Mabary, 173 Mo. pp. 437;
Loeffel v. Hoss, 11 Mo. App. 133, 135; Chapman v.
Hogg, 135 Mo. App. 654; 2 Wood on Limitations, sec.
278, p. 1429; 2 Wood on Limitations, sec. 278a, pp.
1432-3; 21 Am. & Eng. Enc. of Law, pp. 244; In re
Wooten, 118 Fed. 670; Santa Rosa Nat. Bk. v. Barnett,
58 Pac. 85; Flynn v. Seale, 84 Pac. 263, 265; Kline
v. Mohry, 4 Walk. 279; Strong v. Commonwealth Trust
Co., 199 S. W. 1034 (distinguished). (2) The re-
spondent bank was not liable for the alleged diversion
of the funds, because: (a) Stanley M. Masters, pres-
ident and general manager of the Masters Lumber Com-
pany, had the power and authority to sign company
checks and direct the disposition of the proceeds there-
on, in which respect he acted as trustee of the com-
pany's funds deposited by him to his credit in bank.

(b)   A bank may lawfully deposit trust funds to the personal credit of the trustees and must recognize the checks of the trustee when drawing against those funds. (c)   The mere fact that the check itself deposited by the trustee, the proceeds of which are credited to his personal account, carries notice on its face that the funds collected thereon are trust funds, and the fact that the bank credits those funds when collected to the personal account of the trustee, are insufficient to constitute a conversion of those funds by the bank. (d)   Between a trustee and beneficiary, the bank is not liable for the wrongful diversion of the funds deposited by the trustee, unless it knows that the trustee is actually misappropriating the funds and actually participates in the misappropriation.   The bank neither knew of nor participated in any misappropriation by Masters.   (e)   Since the bank was not at any time a creditor of Masters and received none of the checks or proceeds thereof in payment of any debt owing it by Masters, but immediately credited Master's account with the proceeds of each check deposited, the rule which makes a creditor who receives a corporation's check in payment of an officer's personal obligation, party to the misappropriation, and, therefore, liable to restore the money is not applicable.   Gate City Building & Loan Ass'n v. Bank, 126 Mo. 82; Ihl v. Bank of St. Joseph, 26 Mo. App. 129; Reynolds v. Girdelman, 185 Mo. App. 176; Kendall v. Fidelity Trust Co., 119 N. E. 861; United States F. & G. Co. v. Bank of Monrovia, 123 Pac. 352 (18 Cal. App. 437); Batchelder v. Central Bank of Boston, 73 N. E. 1024, 188 Mass. 25; Allen v. Puritan Trust Co., 97 N. E. 916, 211 Mass. 409; Safe Deposit & Trust Co. v. Diamond National Bank, 44 Atl. 1064, 194 Pa. 334; Hoad v. Kensington National Bank, 79 Atl. 714, 230 Pa. 508; Interstate National Bank v. Claxton, 80 S. W. 604, 97 Tex. 569; Martin v. Kansas National Bank, 72 Pac. 218, 66 Kan. 655; Penn. Title & Tr. Co. v. R. E. Loan & Tr. Co., 50 Atl. 998, 201 Pa. 299;

Coleman v. First National Bank, 64 S. W. 93 Tex. Ct. Civ. App.; Bischoff v. Yorkville Bank, 218 N. Y. 106; L. R. A. 1915-C, 518, 528-530 (Note); Munnerlyn v. Augusta Savings Bank, 88 Ga. 333; National Bank v. Insurance Co., 104 U. S. 54; Goodwin v. Am. Nat. Bk., 48 Conn. 550.; Gray v. Johnson, L. R. 3 Eng. & Ir. App. Cas. 1. (3) The bank, in cashing the checks and crediting the proceeds to Masters, was not liable to see that the money was properly applied to the company's purposes. The bank was never notified by the company of any limitation upon the right of Masters to withdraw the funds. Section 11927, R. S. 1909; Gate City Building & Loan Ass'n v. Bank, 126 Mo. 82; Sec. 11929, R. S. 1909. (4) Even if the bank could be said to have participated in a misappropriation by Masters of some of this money, based on the theory that is received it in discharge of some obligation owing it by Masters, still under the statute, appellant could not recover, since to do so the burden is upon apellant to prove that the bank actually knew that Masters had no authority to use the proceeds of the checks for that purpose. There is no evidence of that fact. The statute has merely enacted a new rule of evidence or procedure. Before the statute the officer was presumed not to have authority to use corporate funds for his personal purposes and the burden of proof was upon the recipient of the check to establish that he did have such authority. After the statute, the presumption is that the officer did have such authority and the burden of proof is upon the corporation to establish that the recipient of the check knew that he did not have such authority. The statute relating only to the remedy was operative at the time of trial. Laws 1917, pp. 143-144; Coleman v. Stocke, 159 Mo. App. 47; Bank v. Edwards, 243 Mo. 553; Reynolds v. Whitemore, 190 S. W. 594; McCullam v. Buckingham Hotel, 199 S. W. 417; St. Charles Savings Bank v. Orthwein, 160 Mo. App. 369; 8 Cyc, 925; O'Bryan v. Allen, 108 Mo. 227; 26 Am. & Eng. Enc. Law (2 Ed.), 695; Sheehan v.

The Southern Ins. Co., 53 Mo. App. 351; Lovell v. Davis, 52 Mo. App. 342. Appellant is estopped to claim recovery for the funds in controversy. McCullam v. Buckingham Hotel, 199 S. W. 417 (distinguished); Napoleon-Hill Cotton Co. v. Oetter Gro. Co., 222 S. W. 876; Reynolds, Receiver, v. Third N. Bank (Supreme Ct. Mo., not yet reported ); Pannonia Bldg. & Loan Ass'n v. Trust Co., 108 Atl. 240 (N. J.).

DAUES, J.—This is an action for money had and received, brought by plaintiff, the Appellant, as Trustee in Bankruptcy of the Masters Lumber Company, against the Respondent, Third National Bank, to recover $13,579 alleged to have been received by the Respondent at various times and in various amounts between October, 1911, and February, 1914, for the use and benefit of the Masters Lumber Company.

The case was referred to Henry S. Caulfield, Esq., as Referee, to try all issues in the case. The Referee found in favor of the Bank, and recommended a judgment for the defendant. Plaintiff filed exceptions to the report of the Referee, which, being overruled, the Court entered judgment for the defendant, in accordance with the recommendations in the report of the Referee. Plaintiff, failing to obtain a new trial, comes here on appeal.

This suit was commenced July 19, 1917, the petition being filed and the summons served upon the defendant on that date. The pleadings may well be comprehended from the summary in the Referee's report, which is substantially as follows:

"The petition alleges that the defendant bank is indebted to him, as trustee in bankruptcy of the Masters Lumber Company, a corporation, upon an account for money had and received by the defendant for the use and benefit of said Lumber Company, at times and in amounts stated in the petition and aggregating the sum of $13,454, the said times being between and including October 16, 1911, and February 19, 1914.

"The plaintiff is informed and believes that defendant is entitled to certain credits and set-offs to be applied against said indebtedness, for moneys received by said Lumber Company for its use and benefit from defendant between October 1, 1911, and June 1, 1914, the various items and amounts whereof, as well as the dates of their receipt by said Lumber Company, plaintiff is unable definitely to state, and that plaintiff is ready and willing to give just and proper credits for all of said amounts as may be found due to defendant upon an accounting.

"Plaintiff prays that an accounting be had, and for judgment for such sum as may be found to be due to him thereon.

"At the hearing it was agreed that the petition should be treated as amended so as to include an item as follows: "Nov. 15, 1912, $125," making the total amount sued for $13,579.

"The answer admits that defendant is entitled to certain credits and set-offs as generally alleged in the petition, and denies each and every other allegation.

"The answer further alleges and the reply admits that S. M. Masters, president of the Masters Lumber Company, had a personal account with defendant, to the credit of which, between April 1, 1912, and April 1, 1914, he deposited checks drawn by said company by him as president, on the accounts of said company in other banks; that most of said checks were payable direct to defendant, but some were payable to S. M. Masters and by him endorsed to defendant; that all of said checks were in due course of business cleared by the defendant through the Clearing House and were paid by the drawee banks; and at frequent intervals, stated in the answer, the said drawee banks balanced the bank books of said company and returned them to it, together with said checks. The answer further avers that said books were accepted by the Lumber Company without objection, and as and when so balanced, constituted an account stated between it and said banks.

The answer further avers and the reply denies that said company, its officers, directors and stockholders, had knowledge of said accounts, so stated and balanced, and acquiesced in the correctness thereof, and also knew that S. M. Masters had so drawn said checks and deposited them to his personal account in the defendant bank; that, nevertheless, none of them ever objected thereto, but they at all times acquiesced therein, and they and this plaintiff did, by their acts and conduct, thus lull the defendant and the drawee banks into the belief that said S. M. Masters had authority to draw and deposit said checks and was entitled to the funds represented thereby, and defendant and said other banks, relying and acting upon said acts and conduct, credited and paid said checks, and said parties are therefore now estopped, etc.

"The answer pleads the five-year Statute of Limitation in bar to all transactions which occurred prior to July 19, 1912.

"The answer further alleges that all the proceeds of said checks found its way back into the assets of said Lumber Company either by way of direct re-deposits by S. M. Masters to its account in said drawee banks, or by being used for its benefit, which it accepted."

The Referee, after hearing the evidence, on May 20, 1919, filed his report with the circuit court, which finding of facts and recommendation are as follows:

"The Referee finds that from 1911 to 1914 the Masters Lumber Company was a corporation under the laws of Missouri, engaged in the wholesale lumber business, and the defendant was a national banking corporation, doing a general banking business.

"That from September 30, 1911, to November 30, 1913, both dates included, the Masters Lumber Company was insolvent, but there is no evidence that the defendant bank had any knowledge or notice of such insolvency.

"That on June 5, 1914, the Masters Lumber Company was adjudicated a bankrupt, and plaintiff Fontaine

McCullam was appointed and has qualified and is acting as its trustee in bankruptcy and brings this suit in that capacity.

"That from the organization of the Masters Lumber Company in 1909 until said adjudication S. M. Masters was its president and principal stockholder and a director, and was fully authorized to sign all of its checks.

"That there were two other directors and stockholders, one of whom, S. M. Masters' brother, was bookkeeper and secretary of the company and attended to its banking, and the other of whom was a city salesman for the company, but S. M. Masters, with the consent of said other two, alone dominated and controlled the corporation to practically the same extent as if it were his personal business.

"That on May 31, 1910, S. M. Masters opened a personal bank account in his own name with the defendant bank, and from time to time between the 1st day of April, 1912, and the 1st day of April, 1914, deposited with it, to the credit of his said personal account, ninety-two checks drawn by the Masters Lumber Company by him, as president, drawn against the accounts of said company in other banks. That ninety of these checks were in form made payable direct to the defendant bank; two of them were in form made payable to said S. M. Masters individually, and were endorsed by him.

"That all of said checks so deposited with the defendant bank were in due course of business cleared by it through the St. Louis Clearing House, and were paid by the drawee banks.

"That the defendant bank received none of said checks in payment of any debt owing it by S. M. Masters, and did not profit by any of the deposits, but immediately credited said Masters for each check so deposited.

"That the defendant bank did not know that he was misappropriating the funds of his company, did not actually cooperate in the misappropriation, if there was one, and acted in perfect good faith in all of these transactions.

''That there is no evidence that there was any actual misappropriation by said S. M. Masters of any funds of said company, nor any evidence as to what purposes the proceeds of the checks were ultimately applied by him, except that a large part thereof was returned to said company or paid out for its benefit.

''That during the latter part of the period here involved the company's banking business was done to a considerable extent through S. M. Masters' said personal account with the defendant in order to avoid the banks where said company's accounts were kept appropriating its balances to pay said company's debts to said banks.

''That the drawee banks balanced the bank books of the Lumber Company at the times stated in the answer, and at said times the bank books of said company showing its accounts with said drawee banks, together with all the checks aforesaid, were delivered to said company by said banks, and were examined by the director who was bookkeeper and secretary and were found by him to be correct.

'That there was no concealment of the fact that S. M. Masters, as president of the Lumber Company, was drawing said checks and depositing them to the credit of his personal account with defendant, and one of the two other directors had actual knowledge of and acquiesced in all of said transactions, and the other director had ample opportunity to have known of them.

''That the ninety-two checks aforesaid were drawn and deposited between and including October 16, 1911, and February 19, 1914, and in amounts aggregating the sum of $10,714.

'' That at the hearing plaintiff voluntarily withdrew the item of April 1, 1912, for $25, stated in the petition, admitting that there was no evidence to sustain said item. The Referee finds that there was no evidence to sustain said item.

''The Referee further finds that the funds of the Masters Lumber Company to the aggregate amount of

$2,715 were deposited to the credit of S. M. Masters in his personal account with the defendant bank at times and in amounts. (Items from March 6, 1912, to June 24, 1912, inclusive, set out).

"That as to the nineteen items next above set forth there is no proof whatever as to the form or contents of the checks by which said funds were transferred.

"That $630 of said checks and all, to-wit $2,715 of said other amounts were deposited in the defendant bank and credited to the individual account of S. M. Masters more than five years before the commencement of this suit.

"That on checks drawn by S. M. Masters against his individual account with the defendant bank the defendant bank paid to the Manchester Bank for the credit, use and benefit of the Masters Lumber Company an aggregate sum of $5,630 at times and in amounts. (Items from June 12, 1912, to October 9, 1913, inclusive, set out.)

"That, as shown by the above dates and amounts, $260 of said $5,630 was returned to the Masters Lumber Company more than five years before this suit was commenced.

. "That on checks drawn by S. M. Masters against his individual accounts with the defendant bank the latter paid out for the use and benefit of the Lumber Company an aggregate sum of $2,141.23 at times and in amounts, as follows, to-wit: (Items set out.)

"That during the period involved said S. M. Masters also withdrew currency from his account with the defendant, and deposited it to the credit of the Lumber Company in the aforesaid drawee banks, and he also deposited currency of said company with the defendant to the credit of his individual account, but the evidence as to these currency transactions is too indefinite to permit of basing thereon findings as to the amounts of currency so withdrawn or deposited.

"That some of the proceeds of the checks involved herein was owing to S. M. Masters for his salary as

president of the Lumber Company, but the evidence is too indefinite to authorize a finding as to the amount applicable to such salary.

"The Referee finds against the plaintiff and in favor of the defendant on the cause of action stated in the plaintiff's petition, and recommends that judgment in favor of the defendant be entered accordingly."

Judgment was entered for the defendant by the court on June 30, 1919, and the appeal being perfected the transcript was lodged in our court September 4, 1919.

Complemental to the foregoing, the following serves as a substantial statement of the facts:

S. M. Masters, was the president and a director of the Masters Lumber Company, which did a wholesale lumber business in the City of St. Louis. He held $9900 of the $14,000 issued capital stock. Marcus Masters, his brother, held one share, ($100), was a director and the secretary and bookkeeper of the company. L. C. Johnson held about 40 shares, ($4,000). The corporation had an authorized capital of $18,000. The two Masters and Johnson composed the Board of Directors and all the stockholders. Johnson's duties, it seems, were that of an out-door man, but he is shown to have been in the office with the two Masters constantly, and had full access to the company's books and papers. S. M. Masters, as president, signed all checks, they being written out by the secretary and bookkeeper, Marcus Masters. The bank account of the Masters Lumber Company was kept in two banks, the Central National Bank and the Manchester Bank, both in the City of St. Louis, Mo. S. M. Masters kept his individual account with the respondent, the Third National Bank. There is evidence tending to show that he deposited some cash there, but very generally his deposits were made in the form of checks signed by him as president of the Masters Lumber Company, and were drawn on the Central National Bank and the Manchester Bank. It also appears, whether material or not, that the greater part of the deposits

made by him from time to time in the Third National Bank, and which were drawn out by him, as above stated, were, in fact, used by him in paying liabilities of the Masters Lumber Company, and a very considerable part of the same, the exact amount cannot be determined, were checks of the Lumber Company in either the Central National Bank or the Manchester Bank on account of his salary.

It is admitted by counsel for the appellant in the reply brief that S. M. Masters habitually signed the checks of the corporation, and that being its president he naturally had that power *ex officio*. The record is entirely devoid of any evidence whatsoever that the Third National Bank had any knowledge of any misappropriation of the funds of the Lumber Company by Masters, if, indeed, any such misappropriation occurred. But appellant insists that the evidence adduced shows that Masters drew upon the funds of the corporation by means of checks signed by him as president of such corporation, and deposited such checks with the respondent to his individual account, and that therefore notice is imputed of the conversion, and that by allowing Masters to withdraw such funds by his individual checks the respondent became a participant in the conversion and liable to the corporation for such deposits.

Appellant's formal assignment of errors are as follows:

## I.

On the findings of fact made by the Referee, the plaintiff was entitled to judgment.

## II.

The finding of the Referee that the form and contents of the checks which were not produced in evidence was not proved is contradicted by the undisputed evidence in the case.

## III.

The finding of the Referee that the checks in question were received by the defendant in perfect good

faith is unsupported by the evidence and is wholly immaterial.

## IV.

The judgment in favor of the defendant is wholly unsupported by the evidence.

The Referee's report summarized the pleadings, makes a finding of fact and finds against the plaintiff and in favor of the defendant on the cause of action stated in the plaintiff's petition and recommends judgment in favor of the defendant. The report, we regret, contains little indicatory of the course of reasoning engaged by the Referee on the law of the case.

We adopt appellant's view that the Act approved April 9, 1917, now section 996, Revised Statutes 1919, defining liability of persons collecting checks in payment of debts, etc., does not affect this case, since the facts herein occurred prior to the passage of that act, and for other reasons. [See O'Bannon v. Moerschel, 222 S. W. 1035, l. c. 1036.]

We are mindful of the long line of cases in this State which held (prior to the Act of 1917) that a creditor receiving the check of an officer of a corporation, drawn by the officer on the corporation's funds and which is used in payment of the officer's own or private debt to the drawee, is charged, prima facie, with the knowledge of the fact that the officer is misappropriating for his own use the funds of the corporation.

We may then at the beginning acknowledge the rule which make a creditor who receives an unauthorized corporation check in payment of an officer's personal obligation a party to the misappropriation and therefore liable to restore the money, and we can readily conceive facts and circumstances attending a transaction where one receives a corporation's check from an officer of the corporation, although same is not in payment of a personal obligation which would make the recipient a party to the misappropriation. Indeed, circumstances may attend

the shifting of corporate funds to the officer's personal account which would afford adequate notice to the bank to reasonably support the inference that a misappropriation was intended. But the facts and circumstances in the case before us well justified the Referee in holding that the bank had neither actual nor constructive knowledge of a conversion or misappropriation of the deposits by Masters.

It is conceded that Masters, as president of the Lumber Company, had authority to sign the checks of the corporation. Of course it is not intended here to say that that authority gave him the right to convert the money to his own use. Here we have the president of a corporation, with authority to sign the checks of the company, drawing its funds from the bank and placing such checks in the respondent bank to his own use. Did the Third National Bank, under the circumstances of this case, actually or constructively have knowledge of and participate in the conversion of the corporation's money? We are unable to find any case in this State which would be an authority for so holding.

Upon a careful scanning of the record we fail to find satisfactory proof of a conversion on the part of Masters of these funds, but proceeding upon the assumption that there was a conversion, this case is clearly distinguishable from the cases where a corporation agent pays a private debt with the corporation's funds. And practically all, if not all of the cases from this jurisdiction relied upon by appellant are such cases.

In Clifford Banking Co. v. Donovan Commission Co., 195 Mo. 262, 94 S. W. 527, the clerk and teller of the banking company forged certain checks and used such forged checks to pay the commission company for gambling transactions of the teller with the commission company, and accordingly the clerk had no authority at all to sign or utter the checks and the commission company actually participated in the use of the forged checks in the gambling transactions between them.

The case of St. Charles Saving Bank v. Orthwein Investment Co., 160 Mo. App. 369, 140 S. W. 921, is very similar. Mispagel, a bank cashier, drew drafts on the bank's deposit in other banks and transferred same to the Investment Company to pay his obligations in speculation transactions with the Investment Company, and the court there applied the principle that the drafts were taken in payment of an individual account and that the proceeds ought to be refunded.

In St. Charles Savings Bank v. Edwards, 243 Mo. 553, 147 S. W. 978, again we have a state of facts falling within the admitted rule above set forth, the check being taken by the creditor in payment of a private debt:

In the case of McCullam v. Buckingham Hotel Co., 198 Mo. App. 107, 199 S. W. 417, this court, in the controversy between the appellant here and the Buckingham Hotel Co., had before it for decision a case where a private debt was paid by the corporation's check.

These, and the other Missouri cases cited under this point, do not, as we understand the law therein expressed, go to the extreme here contended for, to-wit that a bank, in the ordinary course of business, without any actual knowledge of conversion, or without any further constructive or implied knowledge than the mere fact that a check drawn by an officer of a corporation, on its funds, is deposited in his individual account, becomes liable if it turns out that such deposit is a step in the conversion of the corporation's funds. The facts in a given case, of course, and, indeed, only slightly different from the facts here, may be such as to place the bank on guard.

While the bank may be regarded, in a highly technical sense, to be a debtor, and as having acquired legal title to the checks, it cannot be said that the bank accepted the checks in payment of a private debt. Applying a practical interpretation to the transaction, it is an entirely different proposition where a bank accepts a check in payment of a debt and where a bank in the ordinary course of business accepts a check for deposit, which means, literally, that the bank has accepted the check for collection and deposit.

This case cannot be regarded, therefore, as coming within the decisions relied upon by appellant where the check is taken in payment of a private debt. The bank could not, under these adjudications, receive and keep any of these funds in payment of a personal debt of Masters to the bank. We cannot say, however, that without any notice whatsoever, either actual or implied, the bank is liable if it fails to determine that the proceeds of such checks deposited are properly applied to the affairs of the company.

In the case of Gate City Building and Loan Assn. v. National Bank of Commerce, 126 Mo. 82, 28 S. W. 663, we have a decision of our Supreme Court which we think controls. The secretary of the Building and Loan Association received $4000 by way of a check from a customer, payable to the association. The secretary, Harris, endorssed the check and deposited it to his personal account in the Bank of Commerce. The bank credited his account, collected the check from the Clearing House, and thereafter Harris drew out the money on his personal checks, embezzled the money and absconded. The Loan Association made demand on the bank for the return of the money, and sued for its recovery in an action for money had and received. There the court said:

"The law of the case seems to be within a narrow compass. There is not a particle of evidence tending to prove that the Bank did not act in perfect good faith in this transaction, in respect of which it occupied no fiduciary relation to the plaintiff. It does not appear from the evidence to what purpose the proceeds of the checks were ultimately applied by Harris—it may have been to his own or to those of the association—nor is this a matter of any importance upon the present issue. The Bank was not responsible for the proper application of those proceeds by him (R. S. 1889, sec. 8691). The check was a negotiable instrrument. [Famous, etc. Co. v. Crosswhite, 124 Mo. 34.] The credit given to the account of Harris was the same as if the money had

been paid him on the check and had been immediately placed back by him and credited on his own account. [Benton, v. Bank, 122 Mo. 332; Oddie v. Bank, 45 N. Y. 735; 2 Morse on Banks and Banking (3 Ed.), sec. 451.] The bank thereby became a purchaser for value, in the ordinary course of business, of the instrument, and entitled to collect the proceeds thereof to its own account if it acquired plaintiff's title by endorsement. So that the only question is, did Harris in his official capacity as secretary, have power to transfer the check by endorsement. . . . If the association has met with any loss by reason of a misapplication of that fund it must be charged to a breach of the trust imposed in one of its officers, and the neglect of duty by the others."

In the case of Ihl. v. Bank of St. Joseph, 26 Mo. App. 129, the court, following the same reasoning, quotes Morse on Banks and Banking, 37, as follows:

"But if the depositor seeks to pay his own debt to the banker by the appropriation of funds to his credit in a fiduciary capacity with the banker, then the banker is affected with knowledge of the unlawful character of the appropation, and would be compelled to refund."

The court then proceeds:

"It is by force of this distinction, and the fact, that in this case, the defendant was in nowise benefited by the misappropriation of the money made by Frenger, that the authorities cited by the plaintiff's counsel on this point have no application."

But counsel for appellant urge, on rehearing, that the case of Kansas City Casualty Co. v. Westport Avenue Bank, 191 Mo. App. 287, 177 S. W. 1092, sustains their position. That case engaged our closest attention; scrutiny discloses that it is not an authority sustaining appellant's view. A traveling salesman employed by a grocery company obtained checks sent to the company and made payable to it, being checks of customers in payment to the grocery company for commodities. And having so obtained them, the traveling salesman, Bell, with no authority to endorse same, en-

dorsed the name of the company to the checks and deposited same to his personal account in the bank. Again we have a forgery case. And the court laid stress upon the fact that Bell had no authority at all to endorse the checks, and, manifestly, this feature in the case made it distinguishable from the Gate City case, decided by the Supreme Court. It is not necessary to discuss same further.

In Reynolds v. Gerdleman, 185 Mo, App. 176, 170 S. W. 1153, this court said:

"There can be no doubt that where one receives the check of a corporation executed by one of its officers, in payment of a debt known to the creditor to be such officer's private debt, the check carries notice upon its face of its 'irregular and illegal character' and if accepted by the creditor the latter takes the risk of being called upon to restore the proceeds (see St. Louis Charcoal Co. v. Lewis, 154 Mo. App. 548, 136 S. W. 716). But this theory is not here tenable, for the reason that it does not appear that any private debt of the company's secretary was paid by the check."

Our reasoning is sustained in other jurisdictions. In Kendall v. Fidelity Trust Co., 119 Northeastern Reporter, 861, the court reasons thus:

"The weight of authority is in accord with the view that if a bank, acting in good faith, merely credits trust funds, knowing them to be such, to the personal account of the fiduciary, it will not be liable if he later misappropriates such funds · . . . As the defendant cannot be charged with constructive notice of the fraudulent acts of Alvero merely because of the form of the checks and because the amounts collected thereon were deposited in his personal account with other funds deposited by him, it follows that there is no. evidence that the defendant knew he intended to misappropriate the funds and the defendant therefore cannot be held liable."

This case cites along array of supporting authorities from many different States.

In Martin v. Kansas National Bank, 66 Kan. l. c. 659, the Supreme Court of Kansas, in applying the same principle, said:

"Any other rule then this must of necessity paralyze business of this character, for if a bank is to be held liable for all trust money deposited and checked out by the trustee in the ordinary course of business, of course no bank would or could safely engage in the ordinary banking business." [See also Bischoff v. Yorkville Bank, 218 N. Y. 106.]

We find support also in cases from Federal Courts. [See Santa Marina Co. v. Canadian Bank of Commerce, 254 Fed. 391 (C. C. A. 9th Circuit), and cases cited; National Bank v. Ins. Co., 104 U. S. 54.]

Counsel for appellant cite cases from other jurisdictions supporting their contention, notably the cases of Bank v. McPherson, 102 Miss. 852, and Wagner Trading Co. v. Battery Park Nat. Bank, 228 N. Y. 37. Without discussing the criticism which is made by competent authority of the first case, it might be said that conflicting authoritites from different jurisdictions are often present to perplex the courts.

We have followed the decisions of our own State in our best light and have adopted what we believe are the best reasoned cases from other jurisdictions, and we confidently reach the conclusion that in holding the plaintiff could not recover in this action against the bank, the Referee and the trial court were right—right on authority of law and in accordance with reason. *Lex est dictamen rationis.*

It is not necessary to consider any of the other points, as this disposes of the case as to the liability of the defendant bank under the facts and circumstances of the case. It follows that the judgment of the Circuit Court should be and is affirmed.

*Allen, P. J.,* and *Becker, J.,* concur.