# Bank of Luverne *v.* Birmingham Fertilizer Co.

*Bill in Equity to Declare and Enforce a Trust.*

1. *Equity pleading; trusts; notice.*—Where a bill in equity seeks to impress and enforce a trust upon certain notes, accounts and evidences of debt in the hands of a purchaser thereof, it is without equity, unless it avers that, at the time of the purchase, the purchaser had knowledge or notice of the trust. And an averment that the purchaser "Was charged with notice of the trust," is insufficient, being merely a conclusion of law drawn by the pleader from other facts alleged in the bill.

APPEAL from Crenshaw Chancery Court.

Heard before Hon. W. L. PARKS.

The Birmingham Fertilizer Company filed its bill of complaint in the Chancery Court of the County of Crenshaw against the Bank of Luverne, Duke Beall and J. H. Beall, the last two being partners under the firm name of Beall Brothers. The Bank of Luverne moved

to dismiss the bill for want of equity. That motion was overruled and the only question involved in this appeal is the correctness of said ruling of sa'd chancery court. The allegations of the bill of complaint are, in substance; that complainant is a corporation, with its principal place of business in the city of Birmingham, the defendants, Duke Beall and J. H. Beall, are residents of Crenshaw county, and the Bank of Luverne is a corporation doing business at Luverne, in the said county of Crenshaw; that, in the years 1901 and 1902, complainant was engaged in the fertilizer business, and Beall Bros. were merchants, and the Bank of Luverne was doing a banking business; that Beall Bros. made a contract with complainant, by which complainant agreed to furnish Beall Bros. a lot of fertilizer; that said agreement was in writing and is attached as an exhibit to said bill; that, by the said agreement, it was provided "For all goods shipped, you (Beall Bros.) are to give your note or notes at the above named prices, not later than May 1st, payable at Luverne, Alabama, Bank of Luverne. And it is further agreed to pay a reasonable attorneys' fee &c.; and you further agree to secure your note or notes by pledging and lodging with said company as collateral security, not later than June 31st, 1902, (or this account becomes payable forthwith) notes of purchasers from you of the goods of said company, and you bind yourselves to hold these notes, which are to be returned to you for collection in due time, (and the accounts until the notes are taken and the goods on hand) in trust for said company until all your indebtedness is paid, remitting the money on these collateral notes and accounts as fast as collected. You agree to pay said company at once for any portion of these goods that you may sell for cash."

The bill further alleges that the part of the agreement above quoted was a controlling inducement to complainant to make the said agreement; that complainant shipped a lot of fertilizer to Beall Bros. under the said agreement, to the total amount of $3,727.25, for which Beall Bros. executed their several promissory notes, three in number, payable respectively, Nov. 1st and 15th,

and Dec. 1st, 1902; the first of said notes having been paid and cancelled, but the other two, aggregating $2,-484, being still unpaid.: that Beall Bros. sold on a credit to their customers all of the said fertilizer, and other goods not sold by said complainant to Beall Bros., and took notes and mortgages from said customers for the indebtedness for said other goods and for said fertilizer all in one instrument, but no notes or mortgages for said fertilizer alone: that Beall Bros. neglected to send complainant any of said notes taken from their said customers, and complainant has a beneficial interest, or trust estate, in said notes &c. taken by Beall Bros. from their customers, to the extent of the fertilizer bought from complainant, and that Beall Bros. were the trustees of complainant and held said notes &c. received from their customers, as soon as taken, for the benefit of complainant to the extent of the fertilizer included in each note &c.

The bill further alleges that in February, 1902, Beall Bros. were indebted to the Bank of Luverne, and said Beall Bros. and said Bank of Luverne claim that, at that time, Beall Bros. executed to said Bank of Luverne a writing, whereby said Beall Bros. transferred all of their notes &c., taken from their customers, to said Bank of Luverne, as collateral security; that complainant does not know as to the good faith of the transaction, but it was had after complainant had made the agreement with Beall Bros., and the trust, which complainant had as to said notes &c., took priority over the transfer to said bank, and said bank was charged with notice of the trust in favor of complainant when said bank acquired its rights; that said notes &c. became due in the fall of 1902, and, before any of said notes &c. became payable, Beall Bros. and said bank entered into another agreement by which it was stipulated that Beall Bros. should act as the agents of said bank in the collection of the said notes &c., and that said collections should be applied to the indebtedness of Beall Bros. to said bank. That Beall Bros. and said bank collected a large amount on the said notes &c. and, in the fall of 1902, Beall Bros. delivered to said bank all of the said notes &c. which

were uncollected, and said bank afterwards made some collections, but complainant does not know what amounts said bank received, either by the collections made by Beall Bros. or by itself; that, afterwards. Beall Bros. were adjudged bankrupts; that the amounts collected by Beall Bros. and said bank included the amounts due for the fertilizer sold by Beall Bros. to their customers; that all of said collections were credited on the amount due by the said customers respectively; that the collections so made amounted to $3.500, in which complainant has a trust, and said bank holds the said collections as a trust fund and as a trustee *in invitum* for the benefit of complainant to the extent of the fertilizer notes, given by Beall Bros. and unpaid; that said bank sold all uncollected notes &c. for $2,500, and said bank holds $1,000 of said $2,500 in trust for complainant.

The prayer is for an accounting to ascertain the amount due complainant, the amount of fertilizer sold by Beall Bros., and to whom sold, and the amounts collected by said bank, which should be credited on that part of the said notes &c. given for fertilizer, and to ascertain the amount due on said notes &c. at the time said bank sold the uncollected accounts, and prays that a trust be declared in favor of complainant and against said bank &c.

THOS. H. WATTS, J. L. HOLLOWAY and W. W. RUSHTON, for appellant.

FOSTER, SAMFORD & CARROLL and STEINER, CRUM & WEIL, *contra.*

McCLELLAN, C. J.—Assuming that on the facts averred in this bill the notes, accounts and other evidences of debt which Beall Brothers transferred to the Bank of Luverne were, while they were held and owned by Beall Brothers, impressed with a trust in favor of complainant to the extent and in the manner claimed in the bill. it is clear, we think, that they were not so impressed in the hands of the Luverne Bank, unless at the

[Bank of Luverne v. Birmingham Fertilizer Co.]

time it purchased them it had knowledge or notice of the existence of this trust as between its assignor and the complainant. We understand this proposition to be admitted. It follows necessarily that the bill has no equity against the bank for an accounting in respect of such trust property, unless it avers that the bank had knowledge or, at least, notice of the trust. We find no such averment in the bill. The only averment made in this connection is this: "And orator alleges that said Bank of Luverne was charged with notice of the trust which orator held therein at the time when said Bank of Luverne acquired an interest therein." This is not a charge of knowledge, of course. Equally clear, it seems to us, it is not an averment that the bank *had* notice of the trust, either as a fact, or as a conclusion of fact. It is, to the contrary, essentially and only an averment of what the pleader supposes to be a proposition of law, *that on the facts stated,* to-wit, the original existence of the trust as between Beall Brothers and complainant, and the transfers by Beall Brothers to the bank, *the law itself charges the bank with notice of the trust.* If this were true, there was no occasion to make this averment, since the conclusion that the bill showed notice would be drawn by the court from the facts themselves, and the injection of this allegation amounts to nothing. But this is not true. The law does not impute notice upon those facts, and the court is not to be diverted from its necessary conclusion that they do not import notice by the pleader's erroneous assertion as to what the law is. There is no averment of notice on the part of the bank of this alleged trust. In its absence the bill is without equity. The decree will be reversed and a decree will be here entered dismissing the bill.

Reversed and rendered.

HARALSON, DOWDELL and DENSON, J.J., concurring.