GEORGE D. NEWTON, as Committee of the Person and Estate of FELIX BOHENKO, an Incompetent Person, Appellant, *v.* GEORGE W. SCOTT, AMERICAN SURETY COMPANY OF NEW YORK, LIVINGSTON COUNTY TRUST COMPANY, MERCHANTS & FARMERS NATIONAL BANK OF DANSVILLE and CITIZENS BANK OF DANSVILLE, Respondents.

Fourth Department, May 4, 1938.

*Edward C. Schlenker*, for the appellant.

*Percival D. Oviatt*, for the respondent Livingston County Trust Company.

LEWIS, J.   Following a conceded misappropriation of trust funds by the committee of an incompetent person, the plaintiff, as successor committee, has brought this action at law against the depositary alleging as a ground for recovery the conscious participation by the depositary in the original committee's breach of trust.

The action met with defeat upon the trial when, at the close of plaintiff's evidence, a motion for a nonsuit and dismissal of the complaint as to the depositary was granted.  Accordingly, upon this appeal, a single question of law is presented: Admitting all facts disclosed by the proof and giving to plaintiff the advantage of every inference reasonably to be drawn from them, was an issue of fact presented which should have been submitted to the jury?   (*Kraus* v. *Birnbaum*, 200 N. Y. 130, 133.)

As judgment by consent has been taken against the defendant surety company and as the record indicates that the defendants Merchants & Farmers National Bank of Dansville and Citizens Bank of Dansville did not appear or answer, we shall treat plaintiff's appeal as addressed to his rights against the defendant Livingston County Trust Company, to which it will be convenient to refer as the depositary.

The total sum of $7,300, which plaintiff seeks to recover for the estate of the incompetent Felix Bohenko, a disabled veteran,

was paid out by the depositary between November 4, 1921, and July 12, 1924. During that period George W. Scott was committee for the incompetent and for more than thirty other incompetent veterans all of whom were lodged, for a time at least, in a hospital at Dansville, N. Y., maintained by the United States Public Health Service. The funds intrusted to Scott as such committee comprised compensation and insurance benefits awarded to the various incompetents and paid from funds supplied by the Federal government. These moneys were deposited with the depositary under separate ledger accounts each of which was designated as " Trust No. —," followed by the number by which the particular account was designated. Each ledger account also bore the name of George W. Scott, as committee, and the name of the incompetent whose funds comprised the deposit. Having thus captioned each account and with full knowledge of the origin of the funds, there can be no question that the depositary knew that the funds comprising each account were impressed with a trust.

It is conceded that of the eight checks involved in this action, the proceeds of which were misappropriated by Scott, seven were deposited by him to his personal account in Merchants & Farmers Bank of Dansville. Scott, as committee, was the drawer, payee and indorser of five of these checks; he signed one check individually which was made payable to him as committee and was so indorsed by him; one check was signed by him as committee and indorsed by him individually as payee. The eighth check, to which particular reference will be made later, was employed as a means of transferring funds from the Bohenko account to the trust account of another incompetent.

The fact that Scott, as trustee, withdrew trust funds from the depositary and redeposited them in his personal account is not enough to charge him with conversion. Nor were such transactions, standing alone, enough to charge the depositary with misfeasance. The funds of the incompetents did not lose their character as trust funds when they were thus redeposited by Scott, the trustee, to his individual account. The original depositary had the right to presume that Scott, as trustee, would apply the funds to their proper purposes under the various trusts involved. (*Bischoff* v. *Yorkville Bank*, 218 N. Y. 106, 111.) It is settled law that " a bank dealing with a fiduciary is not bound to inquire whether the fiduciary is applying the fund to the purposes of the trust, *unless the bank has some notice of threatened misappropriation, and, with that notice, aids the misappropriation.*" (*Clarke* v. *Public National Bank & Trust Co.*, 259 N. Y. 285, 290; *Bischoff* v. *Yorkville Bank, supra; Sagone*

v. *Mackey*, 225 N. Y. 594; *Whiting* v. *Hudson Trust Co.*, 234 id. 394, 406.)

This rule does not relieve a depositary from all responsibility in connection with fraudulent acts by a trustee in dealing with trust funds. It may not ignore acts by a trustee which indicate his malfeasance. If a depositary has actual or constructive knowledge of a course of dealing with trust funds by a trustee, of such a character as would lead a person of reasonable prudence and caution to suspect that trust funds then on deposit are about to be misappropriated, a duty is laid upon the depositary to make reasonable inquiry to ascertain the true facts. If it fails to make such inquiry as a means of verifying or dispelling that suspicion, the depositary may be charged with knowledge of facts which reasonable inquiry would have revealed and it may be held responsible for loss resulting from the trustee's infidelity. (*Bischoff* v. *Yorkville Bank*, *supra*, pp. 113, 114; *Allen* v. *Puritan Trust Co.*, 211 Mass. 409, 419–423; 97 N. E. 916. Cf. *Bank of Commerce* v. *United States F. & G. Co.*, 54 F. [2d] 578, 580; Restatement of the Law of Trusts, § 324, comment f.)

Accordingly our problem involves the question whether there is proof of record of facts from which a jury might have found that the defendant-respondent as depositary had such knowledge of the nature and extent of Scott's dealings with the various trust funds in his charge as would have prompted a prudent person in the exercise of reasonable caution to investigate to ascertain whether he was using such funds for his personal advantage.

In examining the record of proof which was before the Trial Term we are guided by the rule that " One who has reasonable grounds for suspecting or inquiring ought to suspect, ought to inquire, and the law charges him with the knowledge which the proper inquiry would disclose. Actual notice may be proved by direct evidence or it may be inferred or implied. Actual knowledge is not required. Actual notice embraces all degrees and grades of evidence, from the most direct and positive proof to the slightest circumstance from which a jury would have been warranted in inferring notice. If a person has knowledge of such facts as would lead a fair and prudent man, using ordinary thoughtfulness and care, to make further accessible inquiries, and he avoids the inquiry, he is chargeable with the knowledge which by ordinary diligence he would have acquired. Knowledge of facts, which, to the mind of a man of ordinary prudence, beget inquiry, is actual notice, or, in other words, is the knowledge which a reasonable investigation would have revealed." (*Fidelity & Deposit Co.* v. *Queens County Trust Co.*, 226 N. Y. 225, 233; *Ward* v. *City Trust Co.*, 192 id. 61, 70, 71.)

The depositary was not a large bank. Its daily transactions were not great either in volume or in amount and their extent may be gauged by the fact that Scott's checks upon his various committee accounts are said to have come to the attention of the depositary's secretary " practically every day." As bearing upon the bank's knowledge of the condition of Scott's trust accounts and the sudden increase in the size of his withdrawals, which are to be considered presently, the secretary testified: " I had observed some checks of substantial size drawn on these various accounts by himself [Scott] as committee payable to himself as. committee and bearing his indorsement as committee and apparently negotiated in a Dansville bank where he resided."

Mindful of this evidence, which proves the depositary to have been an institution of such limited size that its officers had personal knowledge of the transactions of its depositors, including the withdrawals by Scott from his various trust accounts, we pass to a consideration of the proof which bears upon Scott's banking transactions over a period of years and which involved funds intrusted to his care.

During the early years of Scott's trusteeship, which began in 1920, the record indicates that, except in isolated instances, his withdrawals were in amounts of $100 or less. There came times, however, in 1922 and later, when withdrawals were made in amounts ranging from $500 to $3,000 in one instance, each of which was to George W. Scott as committee or to himself personally. The date when these withdrawals reached amounts which impress us as most unusual, in view of the circumstances disclosed by the record, was April 5, 1922, when, on a single day, seven checks, totaling $8,200, were withdrawn. Two months later, on June twelfth, five checks, totaling $5,000, were withdrawn and in the month following, on July twenty-fourth, $5,200 was withdrawn by the use of only five checks. An examination on September 26, 1922, of the ledger accounts of Scott's various trusts would have disclosed that within the preceding six months, in addition to many small checks which were apparently used for purposes incidental to the care and maintenance of the various incompetents, Scott, had drawn thirty checks, each of which was for $1,000 or more, and the total of which was $35,820. Or had Scott's various trust accounts been examined on April 6, 1922, they would have disclosed that within the previous five days Scott had drawn nine checks against the accounts of seven incompetents which totaled $10,400. Finally, on July 12, 1924, two checks were drawn against the accounts of two incompetents, totaling $5,285.29, one of which was in the amount of $3,000 against the account of the incompetent Bohenko in whose behalf this action is brought.

Such a course of dealing by a trustee with trust funds, the source of which was small monthly payments by the government and the legitimate and necessary disbursements from which are shown by the record to have been small, was sufficient, in our opinion, to have put the depositary upon inquiry. Reasonable prudence and caution would have prompted an investigation to reveal the reason for withdrawals of such sums.

As to whether inquiry of any character was made by the depositary, the proof before us does not go beyond a statement by its secretary, already quoted, that he " had observed some checks of substantial size drawn on these various accounts " of which Scott as committee was drawer and payee and " apparently negotiated in a Dansville bank where he resided." The secretary then stated that he asked Scott " if he was transferring these funds to Dansville." To this inquiry Scott is said to have replied " that he was living in Dansville, his correspondence with the government as well as the families and interests gave his address as Dansville and that very often documents attached to drafts came through a Dansville bank and to facilitate the handling and payment of those drafts to save coming to Geneseo he was transferring these funds there." Then follows significant testimony by the secretary that the only reason for his inquiry of Scott was that " the bank wanted to keep its deposits. * * * Q. You simply wanted to keep your deposits? A. Yes, sir. Q. And that was the occasion of your conversation? A. Yes, sir."

We believe that the proof of frequent withdrawals by Scott of unusually large sums from the trust funds on deposit with the depositary was sufficient to create a question of fact for the jury's determination whether under all the circumstances disclosed by the record and in the exercise of reasonable prudence and caution the depositary should not have conducted an investigation which went beyond the secretary's casual inquiry from Scott which had for its sole purpose to avoid a shrinkage of the bank's deposits.

The proof to which reference has been made goes far to influence our decision. It is reinforced, however, by evidence of another transaction by Scott of which direct knowledge came to the depositary. On February 13, 1923, Scott issued a check in the amount of $700 drawn by him as committee against the account of Calvin Bridgett, an incompetent, and payable to himself as committee. When this check was charged by the depositary against the Bridgett account it left a balance of $213.30. Shortly thereafter a small check reduced the account to $203.20 and later a credit of semi-annual interest raised the balance to $207.36. On November 26, 1923, Scott drew a check in the amount of $500, payable to himself

as committee, which, upon being charged to the Bridgett account, created an overdraft in the amount of $292.64. Scott had misappropriated the avails of the $700 and $500 checks drawn against the Bridgett account, and to make good the overdraft which resulted a check was drawn on November twenty-eighth against the account of plaintiff's incompetent, Felix Bohenko, in the amount of $700, payable to himself as committee for Calvin Bridgett. (This is the eighth check of those which make up the sum of $7,300 which the plaintiff is seeking to recover by this action.) On the date when the overdraft occurred the most cursory examination of the Bridgett account would have disclosed that from July 12, 1920, until April 4, 1922, no check in excess of $100 had been drawn against it. On that date, April 4, 1922, Scott drew a check to himself as committee in the amount of $1,200; on the following day, April fifth, he drew a similar check in the amount of $1,200; on July twenty-fourth he again drew $1,200 and on July thirty-first, $1,000. Then followed on February 13 and November 26, 1923, the two checks of $700 and $500, respectively, which resulted in the overdraft which was made good on November twenty-eighth by the deposit of the $700 check drawn upon the Bohenko account.

It can hardly be said with reason that these large withdrawals from the Bridgett account when examined in connection with all the other small debit and credit items which appeared upon the ledger since the date when the account was opened would not have excited the suspicion of a banker exercising the prudence and caution which the law requires. At least the large withdrawals and the final overdraft created a condition which prompted reasonable inquiry — which we understand to mean an inquiry prosecuted with a degree of diligence adapted to the circumstances which prompted it. However, the proof of the inquiry made is not of such a character as would justify our holding as a matter of law that it was sufficient. The depositary's secretary, when asked to explain the transaction, stated that the bank's records indicated that the $700 check dated February 13, 1923, had been erroneously drawn against the Bridgett account instead of against the Bohenko account and that the $700 withdrawal from the Bohenko account was apparently made to correct the error. He frankly admitted, however, that he had no recollection of the transaction and did not recall any " explanation " made by Scott when the overdraft occurred. Scott in turn testified that he had no recollection of having had a conversation with the bank's officers concerning the overdraft although he admitted frankly that he had misappropriated the proceeds of the $700 check drawn against the Bridgett account.

We find in this proof of Scott's dealings with the Bridgett account and its replenishment to the extent of $700 from the Bohenko account, *prima facie* proof of notice to the depositary of Scott's breach of trust sufficient to put the bank upon inquiry as to whether his withdrawals were in line with the maintenance of strict fidelity to his various trusts, including the Bohenko account. Here was a substantial overdraft by a trustee which created a personal obligation on his part to the extent of that overdraft. It called for prompt action by the depositary by which Scott should arrange to make good the deficiency in trust funds which he, as trustee, had created. As already pointed out, if the depositary had then examined the overdrawn Bridgett account it would have revealed withdrawals therefrom in large amounts — not small checks for the care and maintenance of the incompetent — which had practically exhausted the fund. But the record affords us no proof of a searching investigation by the depositary. On the contrary, neither its officers nor the trustee recall that one was made. The only proof is found in the bank records which show that to make good the overdraft in one trust account the depositary permitted Scott as trustee to transfer $700 from another trust fund of which he was also the trustee.

To sustain the judgment now being reviewed we must say as matter of law that the transaction last described and those to which reference has previously been made did not call for a more diligent inquiry by the depositary than that which is disclosed by the record. This we cannot do.

We find in the proof before us and in the reasonable inferences to be drawn therefrom sufficient to justify a submission to a jury of the question of fact whether the depositary performed the duty required of it under the rules of law outlined above. In reaching that conclusion we have in mind that " Inference is never certainty, but it may be plain enough to justify a finding of fact." (*Tortora* v. *State of New York*, 269 N. Y. 167, 170; *Hart* v. *Hudson River Bridge Co.*, 80 id. 622.)

In our consideration of this appeal we have not overlooked the ruling in *Newton* v. *Livingston County Trust Co.* (243 App. Div. 682; affd., 268 N. Y. 557). There the present plaintiff, as committee for another incompetent, sought to recover from one of the present defendants upon a similar cause of action. There, as here, judgment was entered upon a nonsuit and dismissal of the complaint granted at the close of plaintiff's proof. We find, however, in the record at hand much evidence, not present in the *Newton* case, which bears upon the course of dealing with various trust funds by George W. Scott as trustee and which has served to influence our decision in the case at bar.

That part of the judgment from which appeal is taken should be reversed on the law and a new trial granted, with costs to the appellant to abide the event.

All concur, except SEARS, P. J., and CROSBY, J., who dissent and vote for affirmance. Present — SEARS, P. J., CROSBY, LEWIS, CUNNINGHAM and DOWLING, JJ.

Judgment so far as appealed from reversed on the law and a new trial granted, with costs to the appellant to abide the event.