Dr. Melvin A. CASSEL, Successor Trustee of Trust A and Trust B under the Will of George B. Fleischman, Deceased, Appellant,

v.

**MERCANTILE TRUST COMPANY,**
a Corporation, Respondent.

No. 51120.

Supreme Court of Missouri,

Division No. 1.

July 12, 1965.

Motion to Remand with Leave to File an Amended Petition or to Transfer to Court En Banc Denied Sept. 13, 1965.

Lewis, Rice, Tucker, Allen & Chubb, Samuel H. Liberman, Eugene J. Gabianelli, St. Louis, for appellant.

Thompson Mitchell Douglas & Neill, William G. Guerri, W. Stanley Walch, Edwin D. Akers, Jr., St. Louis, for respondent.

HOUSER, Commissioner.

Action by Dr. Melvin A. Cassel, successor trustee under the will of George B. Fleischman, deceased, against Mercantile Trust Company, a banking corporation, to recover $108,225 allegedly permitted by Mercantile to be withdrawn from the bank

account of the estate by Irl B. Rosenblum, plaintiff's predecessor in trust, and used by Rosenblum for his own personal purposes.

Mercantile filed a motion to dismiss on the ground that the action is barred by limitations [§ 516.120(1), V.A.M.S., or in the alternative, § 516.120(4) or (5), V.A.M.S.] and that the petition fails to state a claim upon which relief can be granted.

The circuit court sustained the motion to dismiss on the theory that the action is barred by limitations [§ 516.120(1)], and dismissed the petition with prejudice. Plaintiff has appealed from the judgment of dismissal.

On this appeal both parties have briefed both points raised in the motion to dismiss. We pass over the point on limitations, preferring to consider first the meritorious, central question in this case: whether the petition states a claim upon which relief can be granted.

Plaintiff's first amended petition alleges these facts: George B. Fleischman died on August 21, 1950 leaving a will by which he left his estate to Irl B. Rosenblum in trust under two separate trusts, and appointed Rosenblum executor of his will. Rosenblum qualified and acted as executor and trustee until his death on September 26, 1956. On September 25, 1950 Rosenblum opened a checking account with Mississippi Valley Trust Company, in his name as executor of the estate of decedent. On April 14, 1952 (after Mississippi Valley Trust Company merged with Mercantile Trust Company) Rosenblum presented at the window of the cage of teller No. 60 the following check on a form prescribed by the bank:

St. Louis, Mo. 4/14 1952

Received in Person From My Checking Account at
Mercantile Trust Company
Saint Louis, Mo.

Nine hundred ------------------------------------Dollars $900–00/100

Not Negotiable

To be used only at this bank
and by the depositor personally

Irl B. Rosenblum, Executor
Estate of George B. Fleischman, Deceased

On presentation Mercantile paid Rosenblum $900 and charged the same to the account of the estate of decedent. Then and for years previously Mercantile and its predecessor was authorized by law to act as executor of estates of deceased persons and had so acted in hundreds of estates administered in the probate courts of the City and County of St. Louis. It maintained a probate division in its trust department composed of officers and personnel cognizant of the duties and responsibilities of executors and the practices and procedures relating to the administration of estates. Mercantile had actual and constructive knowledge of the laws relating to such administration and of these practices and procedures; knew that executors had no right to use estate funds except to pay claims or administration expenses allowed and approved by the probate court or pursuant to distribution, or otherwise by court approval; that an executor is required to file periodic settlements and attach receipts and vouchers evidencing disbursements; that payments of claims, expenses, distributions, etc. are not normally, customarily or usually made in cash but by check. It was alleged that the

withdrawal in cash by an executor of the substantial sum of $900 was in and of itself such an abnormal and unusual practice as to arouse in the mind of Mercantile a suspicion that the funds so withdrawn were not to be used for the benefit of the estate but by Rosenblum for his own personal purposes. On April 18, 1952 Rosenblum in the same fashion withdrew $600, which was charged to the account of the decedent's estate. On April 22, 1952 $900 was in similar manner withdrawn and charged. These monies were not used by Rosenblum for the use and benefit of decedent's estate but for Rosenblum's own personal purposes "in violation and breach of trust of the duties imposed upon him." It was alleged that these withdrawals, more than 18 months after Rosenblum's appointment as executor, a fact then known to Mercantile, operated *to charge Mercantile with notice* that Rosenblum was withdrawing and using funds of decedent's estate for his own personal use in breach of trust (Paragraph 16). Notwithstanding said notice of said breaches of trust Mercantile continued to pay cash to Rosenblum on checks drawn by him in this same manner and to charge same to decedent's account, all the checks having been presented to and paid out by the bank's teller No. 60, as follows:

| Date | Amount | Date | Amount |
| --- | --- | --- | --- |
| 5/9/52 | $ 900.00 | 12/10/52 | 2,000.00 |
| 5/12/52 | 900.00 | 12/12/52 | 2,000.00 |
| 5/16/52 | 900.00 | 12/17/52 | 2,000.00 |
| 5/20/52 | 900.00 | 12/19/52 | 2,100.00 |
| 5/27/52 | 1,400.00 | 12/23/52 | 2,000.00 |
| 6/4/52 | 1,200.00 | 12/24/52 | 2,000.00 |
| 6/11/52 | 1,600.00 | 2/24/53 | 1,000.00 |
| 6/16/52 | 1,200.00 | 3/5/53 | 2,100.00 |
| 6/17/52 | 1,200.00 | 3/6/53 | 2,100.00 |
| 6/23/52 | 1,500.00 | 3/26/53 | 500.00 |
| 6/26/52 | 800.00 | 4/1/53 | 300.00 |
| 7/2/52 | 800.00 | 4/2/53 | 2,400.00 |
| 7/18/52 | 900.00 | 4/3/53 | 2,000.00 |
| 7/23/52 | 1,900.00 | 4/8/53 | 300.00 |
| 7/25/52 | 1,800.00 | 4/9/53 | 2,400.00 |
| 7/31/52 | 1,100.00 | 4/10/53 | 2,400.00 |
| 9/2/52 | 900.00 | TOTAL...$47,500.00 | |

Commencing on April 11, 1953 Rosenblum presented checks drawn on Mercantile, signed by him as executor of decedent's estate, payable to himself, to Mutual Bank & Trust Company in St. Louis, as follows:

| Date | Amount | Date | Amount |
| --- | --- | --- | --- |
| 4/11/53 | $2,000.00 | 11/18/53 | 1,500.00 |
| 4/14/53 | 2,000.00 | 11/19/53 | 2,000.00 |
| 4/16/53 | 2,000.00 | 12/14/53 | 2,000.00 |
| 4/17/53 | 2,000.00 | 12/18/53 | 2,000.00 |
| 4/20/53 | 2,000.00 | 2/17/54 | 700.00 |
| 5/1/53 | 2,000.00 | 6/16/54 | 1,900.00 |
| 5/8/53 | 1,400.00 | 7/27/54 | 650.00 |
| 5/12/53 | 1,400.00 | 8/10/54 | 700.00 |
| 5/27/53 | 2,000.00 | 9/7/54 | 700.00 |
| 5/29/53 | 2,000.00 | 10/20/54 | 500.00 |
| 6/2/53 | 1,600.00 | 11/17/54 | 2,000.00 |
| 6/23/53 | 400.00 | 11/19/54 | 2,000.00 |
| 7/16/53 | 500.00 | 12/6/54 | 2,000.00 |
| 7/23/53 | 200.00 | 12/7/54 | 2,400.00 |
| 10/6/53 | 400.00 | 12/9/54 | 2,400.00 |
| 10/22/53 | 350.00 | 12/10/54 | 2,400.00 |
| 11/3/53 | 2,000.00 | 12/11/54 | 2,000.00 |
| 11/12/53 | 2,000.00 | 10/14/55 | 90.00 |
| 11/17/53 | 2,000.00 | 4/6/56 | 4,535.00 |
| | | TOTAL...$60,725.00 | |

Upon presentation of each of these checks bearing Rosenblum's endorsement as payee Mutual paid the amounts of said checks and transmitted them to Mercantile, which paid over and credited to Mutual's account the amounts of the checks, and charged them to the account of the estate of decedent.

The proceeds of the checks totaling $47,500 and of the checks totaling $60,725 were not used by Rosenblum for estate purposes but for his own personal purposes in violation and breach of trust of the duties imposed upon him.

Mercantile's predecessor was named as substitute trustee and executor in the event of Rosenblum's death, a fact known to Mercantile prior to the time the foregoing withdrawals were permitted. In paragraph 23 it was alleged that Mercantile "had notice" of Rosenblum's breaches of trust "not later than" April 22, 1952. It was

further alleged that Mercantile thereafter was obligated to refuse to pay the checks presented to it at its bank and the checks presented to and cashed by Mutual, and that by paying said checks after notice Mercantile "participated in the said breaches of trust and became liable for the amounts which Rosenblum appropriated to his own use in violation and breach of trust."

On October 13, 1956 plaintiff Cassel was appointed administrator d. b. n. with the will annexed. He qualified and acted as such until finally discharged by order of the probate court. On May 9, 1957 he was appointed successor trustee by court order and has acted as such since that date.

■ In Lucas v. Central Missouri Trust Co., 350 Mo. 593, 166 S.W.2d 1053, this Court stated three ways in which a bank may incur liability and be compelled to make good deposits that have been misappropriated by a fiduciary: (1) by a violation on its part of the contract, express or implied, between it and the owner of the fund; (2) by appropriating the fund, either with or without the fiduciary's consent, to the payment of the latter's debt to the bank; and (3) by assisting the fiduciary to accomplish the misappropriation, the bank having knowledge, actual or constructive, that the fraud is being or is about to be perpetrated by the fiduciary. And see 5A Michie, Banks and Banking § 57 a, e. The reason for the bank's

liability under (3) is that the bank "knowingly makes itself a party to a fraud, and must make good the loss that results from the appropriation." 166 S.W.2d, 1.c. 1058; 10 Am.Jur.2d Banks §§ 521, et seq. On this appeal we are concerned only with (3), there being no contention that Mercantile violated its contract or appropriated the fund.

■ In order to state a claim for relief under (3) the pleader must allege, among other things, (a) facts which show that the bank had knowledge of the trust character of the funds on deposit and that the fiduciary unlawfully withdrew and misappropriated trust funds; (b) facts sufficient to overcome the presumption in which the bank is entitled to indulge, namely that in withdrawing trust funds the fiduciary is acting lawfully and in the performance of his duties as a trustee, and that he will appropriate the money, when drawn, to a proper use [1]; (c) facts which show, directly or by necessary inference, that the bank participated in the breach of trust in receiving or permitting the trustee to withdraw the trust funds, by receiving the deposit or permitting the withdrawal with notice of the breach of trust.[2]

■ The requirement that Mercantile have knowledge of the trust character of the funds on deposit is met by paragraph 9 which alleges that Rosenblum opened a checking account in the name of "Irl B.

[1]. New Amsterdam Cas. Co. v. Robertson, 129 Ore. 663, 278 P. 963, 64 A.L.R. 1396; Bischoff v. Yorkville Bank, 218 N.Y. 106, 112 N.E. 759, 761, L.R.A.1916F., 1059; 9 C.J.S. Banks and Banking § 342 a., p. 687; § 338; 10 Am.Jur.2d Banks § 523, citing 22 federal and state decisions, including Gate City Bldg. & L. Ass'n v. National Bank of Commerce, 126 Mo. 82, 28 S.W. 633. The reason for this rule is that it is not the business of the bank in this situation to supervise the administration of the trust; that to impose upon the bank that duty—to require the bank to ascertain at its peril the background and *bona fides* of every transaction involving a fiduciary depositor dealing with trust funds—would unreasonably burden banks and seriously interfere with banking transactions. United States F. & G. Co. v. Mississippi Valley Trust Co., Mo.App., 153 S.W.2d 752, 758; Brookhouse v. Union Pub. Co., 73 N.H. 368, 62 A. 219, 2 L.R.A.,N.S., 993; City of San Antonio v. Burke, Tex.Civ.App., 65 S.W.2d 408.

[2]. Griffin v. National Bank of Commerce, Mo.Sup., 246 S.W. 180; Restatement of Trusts 2d § 324, comment f; 10 Am.Jur. 2d Banks § 524; 9 C.J.S. Banks and Banking §§ 338, 353 e., p. 708, fn. 70; 5a Michie, Banks and Banking §§ 57d, 90.

Rosenblum, Executor Estate of George B. Fleischman, Deceased." The style and name in which the account was opened and stood charged Mercantile with notice and knowledge of the trust character of the funds in the account. West St. Louis Trust Co. of St. Louis v. Brokaw, 232 Mo.App. 209, 102 S.W.2d 792, 796 [7]; Day v. Old Colony Trust Co., 232 Mass. 207, 122 N.E. 189, 2 A.L.R. 1554; 5A Michie, Banks and Banking § 90, p. 235.

The requirement that the fiduciary unlawfully withdrew and misappropriated trust funds is met by paragraphs 15 and 21, which allege that the proceeds of the checks were not used by Rosenblum for the payment of any debts, claims or lawful charges due from the estate but for his own personal purposes in breach of trust.

 In connection with (b), supra, notwithstanding a bank knows or is charged with knowledge of the trust character of funds on deposit, a bank is not necessarily liable if such funds are withdrawn by the fiduciary and misappropriated by him. 10 Am.Jur.2d Banks § 523. The relationship between bank and depositor is that of debtor and creditor, and as to checking accounts the implied contractual obligation assumed by the bank is to honor and pay on presentation the depositor's checks to the person or persons to whom he orders payment. S. S. Allen Grocery Co. v. Bank of Buchanan County, 192 Mo.App. 476, 182 S.W. 777; New York Title & Mortgage Co. v. First Nat. Bank, 8 Cir., 1931, 51 F.2d 485, 77 A.L.R. 1052, cert. denied 284 U.S. 676, 52 S.Ct. 131, 76 L.Ed. 572; 10 Am.Jur.2d Banks § 523. This rule is fully applicable to checks drawn by a trustee on trust funds held on deposit. Section 362.480, V.A.M.S., provides: "Whenever any deposit shall be made in any bank, banking institution or trust company by any person as trustee, or by any person in trust for another, and no other or further notice of the existence and terms of such trust shall have been given in writing to the bank, banking institution or trust company, the same may be paid upon the check or order of said trustee, bearing his signature and containing the same words in which said deposit was made." This rule obtains and there is no liability on the bank where the depositor draws the check to his own order, State ex rel. Elberta Peach & Land Co. v. Chicago Bonding & Surety Co., 279 Mo. 535, 215 S.W. 20, and notwithstanding he presents it for deposit in his own personal account, Gate City Bldg. & L. Ass'n v. National Bank of Commerce, 126 Mo. 82, 28 S.W. 633; New Amsterdam Cas. Co. v. National Newark & Essex Banking Co., 117 N.J.Eq. 264, 175 A. 609 [5], aff. 119 N.J.Eq. 540, 182 A. 824, in the absence of knowledge or notice that the funds are being unlawfully withdrawn, it being presumed that the trustee's use of the funds is proper.

We come then to the key question, whether the petition states facts sufficient to show participation in the breach of trust by Mercantile with notice or knowledge of the breach of trust. There is no allegation or contention that the bank appropriated funds of the estate or received any of the fruits of Rosenblum's misappropriation, such as obtaining payment of a debt due it by the fiduciary in his individual capacity, or otherwise. Nor is it alleged or contended that Mercantile had notice in the sense that its officers or employees were actually apprised of the fact that Rosenblum was stealing the trust funds from the account and personally pocketing them.

 First is appellant's contention that its allegation in paragraph 23 that Mercantile "had notice of said breaches of trust not later than April 22, 1952" is an allegation of an ultimate fact in issue, in and of itself sufficient to charge notice. Reading the petition as a whole it is plain that this was not intended as an allegation of actual notice but as a general characterization of the constructive notice charged in para-

graph 16 by reason of the cash withdrawals of $900, $600 and $900 within a space of 8 days, and that the general allegation of notice in paragraph 23 is limited by the specific allegations in paragraph 16. Hellesen v. Knaus Truck Lines, Inc., Mo.Sup., 370 S.W.2d 341, 344. Specific allegations limit and control general allegations in determining the sufficiency of a petition. Coble v. Economy Forms Corp., Mo.App., 304 S.W.2d 47. The petition, read from its four corners, does not allege that Mercantile knew that Rosenblum was withdrawing and using trust funds for his own personal purposes. The allegation that the three cash withdrawals mentioned operated "to charge the defendant with notice" is a conclusion of law, insufficient to meet the requirement that facts be pleaded. In 41 Am.Jur. Pleading § 24 it is recognized that an allegation "that a person was charged with notice" is a conclusion which adds nothing to a pleading. In Bank of Luverne v. Birmingham Fertilizer Co., 143 Ala. 153, 39 So. 126, an allegation "that said Bank of Luverne was charged with notice of the trust" was held to be a conclusion of law, not a charge of knowledge or an averment of a fact.

Citing Rhodes v. Outcalt, 48 Mo. 367, 370; Golden v. National Utilities Co., 356 Mo. 84, 201 S.W.2d 292, 297, and 39 Am.Jur. Notice and Notices §§ 4, 5 and 6, appellant next contends that actual notice means knowledge of facts and circumstances sufficiently pertinent in character to provide the means and enable reasonably cautious persons to investigate and to ascertain the ultimate fact; that as stated in In re Bohenko's Estate, 254 App.Div. 140, 4 N.Y.S.2d 420, if a depositary has knowledge of a course of dealing with trust funds by a trustee "of such a character as would lead a person of reasonable prudence and caution to suspect that trust funds then on deposit are about to be misappropriated, a duty is laid upon the depositary to make reasonable inquiry to ascertain the true facts. If it fails to make such inquiry as a means of verifying or dispelling that suspicion, the depositary may be charged with knowledge of facts which reasonable inquiry would have revealed and it may be held responsible for loss resulting from the trustee's infidelity."

From the following facts and circumstances alleged in the petition appellant says a jury would have been warranted in finding that Mercantile should have suspected Rosenblum of misappropriation and should have conducted an investigation: The "unusual and abnormal" withdrawals of $900, $600 and $900 in cash on April 14, 18 and 22, 1952; Mercantile's knowledge arising out of its experience with probate administration and laws that Rosenblum was acting in "an abnormal and unusual manner"; the cash withdrawals in May, 1952, which resulted in an aggregate withdrawal of $7,400 in two months, and the subsequent course of dealing. Appellant argues that the transactions were unusual in nature; that Rosenblum's drawing of checks as executor payable to himself personally was a highly suspicious circumstance; that a transaction in which a bank pays cash to the fiduciary out of trust funds on deposit on his presentment of counter checks in itself indicates that the funds are being used by the fiduciary for his personal use; that the amounts were large in size, and in even or round numbers; that this is not a single isolated occurrence but a series of transactions—a course of dealing—covering a period of 4 years; and that the bank is "bound by any information which it could have obtained had it pursued inquiry as to the use to which said withdrawals were to be put, until the truth had been ascertained." Appellant cites and quotes from Brede Decorating, Inc. v. Jefferson Bank & Trust Co., Mo. Sup., 345 S.W.2d 156; Massachusetts B. & Ins. Co. v. Standard T. & Sav. Bank, 334 Ill. 494, 166 N.E. 123, and Bischoff v. Yorkville Bank, 218 N.Y. 106, 112 N.E. 759, L.R.A. 1916F 1062, and many other cases, and urges that by investigating public records Mercantile, without embarrassment or

undue burden, could have uncovered the whole story of the misappropriations.

■■ A bank is not put on inquiry by the fact standing alone that the fiduciary-depositor makes withdrawals in cash or that he draws checks upon his account as trustee payable to himself personally, Bogert, Trusts and Trustees, 2d Ed., § 907; Restatement of Trusts 2d § 324 g; 5 Zollman, Banks and Banking, Perm. Ed., § 3173, p. 179; 5A Michie Banks and Banking § 90, or deposits such checks in his personal account. McCullam v. Third Nat. Bank, 209 Mo.App. 266, 237 S.W. 1051; Gate City Bldg. & L. Ass'n v. National Bank of Commerce, 126 Mo. 82, 28 S.W. 633; United States F. & G. Co. v. Mississippi Valley Trust Co., Mo.App., 153 S.W.2d 752, 758; 10 Am.Jur.2d Banks § 525, p. 499, fn. 2. "The view generally taken is that the bank is entitled to believe, in the absence of circumstances other than the form of the check, that the fiduciary is paying out trust credit to himself in discharge of an honest debt, as for example, in payment of his commissions, or in reimbursement of advances he has made, and if the bank does not actually know that a breach of trust is intended, or does not know of suspicious circumstances outside the form of the checks which make it bad faith not to inquire, the bank is not liable for cashing the check of the trustee. * * * Here again there is an underlying feeling that, where a transaction respecting trust commercial paper is such that it may be honest and fair, the position of the bank as a mere medium for accepting and disposing of credit should not impose upon it the duty of acting as a detective for the benefit of the cestuis. No compensation for such service is in fact included in the return which the bank gets by lending out the sums deposited. Such investigating duties would be so arduous as to slow up commercial processes in a very disadvantageous way." Bogert, Trusts and Trustees, 2d Ed., § 907, pp. 264–266. As stated in the United States F. & G. Co. case, supra, 153 S.W.2d, l.c. 758:

"Any other rule would place a burden on the bank or trust company for which it receives no remuneration and would so complicate the handling of commercial paper that no bank or trust company could safely transact a banking business with any but individuals in their own right."

■ It is a question of good faith. If the circumstances known to the bank, other than the form of the check, are of such a nature that the bank's action in permitting withdrawals from the account amounts to bad faith on its part, the bank is put on inquiry and is charged with the knowledge of the facts which a reasonably diligent inquiry would have revealed; otherwise, if the bank acts in good faith. That bad faith is the basis of liability in cases of this nature runs like a thread through both the decisional and statutory law of this state. Section 456.230, V.A.M.S., provides: "No person who shall, in good faith, pay money to a trustee, or other person acting in a fiduciary capacity, authorized to receive the same, shall be responsible for the proper application of such money; nor shall any right or title, derived by him from such trustee or other fiduciary in consideration of such payment, be called in question in consequence of any misapplication by such trustee." Under the predecessor of this statute the action of a bank in crediting to the individual account of a secretary of a building and loan association a check payable to the association and endorsed by the secretary was upheld, there not having been "a particle of evidence tending to prove that the bank did not act in perfect good faith" in the transaction. Gate City case, supra, 28 S.W. l.c. 634. That a suit of this nature *must have as its basis* bad faith or actual knowledge on the part of the bank of the fiduciary's misappropriation was recognized in the United States F. & G. Co., case, supra, 153 S.W.2d, l.c. 758, wherein it was said, l.c. 760: " * * there is no allegation of bad faith on the part of the Trust Company or of knowledge that the guardian was misappropriating or diverting the trust fund, or that the Trust

Company received any benefit from the transaction, and absent such elements the Trust Company is not liable." [3]

In permitting the withdrawals did Mercantile act in bad faith? Was Mercantile put on inquiry, with knowledge that the withdrawals were of large amounts and usually in round or even numbers of dollars, or considering the number of withdrawals (74), or their frequency (almost every month and as high as ten times in one month), or their duration (over a 4-year period)?

Appellant adverts to the suspicion which some of these facts are said to have aroused in the "mind" of Mercantile, but mere surmise or suspicion that a misappropriation is intended or about to occur is not sufficient to charge a bank with notice. Bischoff v. Yorkville Bank, 218 N.Y. 106, 112 N.E. 759, 761; Davis v. Pennsylvania Co. for Insurance on Lives, 337 Pa. 456, 12 A.2d 66, 69 [4]. Of course, "[i]n rare cases a person dealing with a trustee may have knowledge of facts, aside from the form of a bank account * * * which, while they do not carry a clear notice of a breach of the trustee's duties, are so suspicious that the action of the third party in going through with the transaction without inquiry amounts to such a reckless disregard of the rights of the beneficiaries as to amount to bad faith or dishonesty. In these instances the courts treat the third person as having taken part in a breach of trust." Bogert, Trusts and Trustees, 2d Ed.,

§ 909. The facts and circumstances "may be so cogent that to remain passive amounts to bad faith." 5A Michie, Banks and Banking, § 57b, p. 155. For instance, if by comparison of the amounts of an executor's withdrawals with the reasonably-to-be-anticipated needs of administration in the normal discharge of the duties of the office it would at once be apparent to any reasonable person that the withdrawals were excessive and improper, the bank could not close its eyes to the inferences reasonably to be drawn from the actions of the executor and would be charged with knowledge of the misappropriation and participation in the breach of trust. For the bank to be held on this ground, however, it would have to be shown that the bank had knowledge of the size of the estate; of the amount of unpaid claims; of the amounts necessary for the payment of bequests, for payments to cestuis under the provisions of the indenture of trust, for the expenses of administration, etc. Without knowledge of the needs, knowledge of the provisions made for unknown needs would be without value in forming a judgment. This precisely is what is lacking here. No facts are alleged demonstrating that Mercantile knew that Rosenblum's withdrawals were out of proportion to the financial needs of the estate. Absent such allegations of fact we cannot say as a matter of law that Rosenblum's withdrawal of $108,225 over a 4-year period was such a shockingly large amount as to proclaim fraud or that on the basis of the facts alleged in the petition a jury could

---

3. Section 456.290, V.A.M.S., provides: "If a deposit is made in a bank to the credit of a fiduciary as such, the bank is authorized to pay the amount of the deposit or any part thereof upon the check of the fiduciary, signed with the name in which such deposit is entered, without being liable to the principal, unless the bank pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in drawing the check or with knowledge of such facts that its action in paying the check amounts to bad faith. * * * *" Since this section was enacted in 1959, after the cashing of the last of Rosen-

blum's checks, it is not controlling in this case. Section 456.240, subd. 2., V.A.M.S., declares that a thing is done "in good faith" within the meaning of the Uniform Fiduciaries Law (of which § 456.-290 is a part) when it is in fact done honestly, whether it be done negligently or not. Although not controlling, these sections are of significance. They reflect and constitute a codification of the common law. In this connection see New Amsterdam Cas. Co. v. National Newark & Essex Banking Co., 117 N.J.Eq. 264, 175 A. 609, 613, aff. 119 N.J.Eq. 540, 182 A. 824.

reasonably find that the circumstances were so suspicious that in permitting the withdrawals without inquiry Mercantile was so recklessly indifferent to the rights of the beneficiaries of the estate as to be guilty of bad faith or dishonesty. No bad faith was found in Davis v. Pennsylvania Co. for Ins. on Lives, 337 Pa. 456, 12 A.2d 66, where $18,400 was transferred from a trust to an individual account in 18 transactions over a 2-year period, the court commenting that the bank presumably knew nothing about the assets of the trust, or what other bank accounts the trustee might be maintaining, or what proportion of the entire estate was represented by the $18,400 transferred. In Rodgers v. Bankers' Nat. Bank, 179 Minn. 197, 229 N.W. 90, in a similar situation the court, citing six cases, held that the number of the checks (19 transactions) "is not important." 229 N.W., l.c. 94 [4]. In New Amsterdam Cas. Co. v. National Newark & Essex Banking Co., 117 N.J. Eq. 264, 175 A. 609, bad faith was not found by the size of the checks, l.c. 618: "No ground is perceived upon which to except from the principles of the common law, * * * a fiduciary's check because of the largeness of the amount, and no adjudication has been brought to our attention indicating that it is a badge of fraud."

■ The fact that the withdrawals were in even, round, amounts is not sufficient to charge Mercantile with dishonesty in not investigating. American Surety Co. of New York v. Waggoner Nat. Bank, 5 Cir., 83 F.2d 99, 102 [8]. The number and frequency of the checks, in principle, is immaterial. In McCullam v. Third Nat. Bank, 209 Mo.App. 266, 237 S.W. 1051, 92 checks were involved, but the court held that under all the facts in that case the referee was justified in holding that the bank had neither actual nor constructive knowledge of a conversion or misappropriation of the funds by the company president. In Town of Eastchester v. Mt. Vernon Trust Co., 173

App.Div. 482, 159 N.Y.S. 289, 295, the court said: "Nor did the multiplicity of checks bring into view vicious intention on the part of the depositor, of which the depositary should have taken notice. In principle it is immaterial whether one or many checks were drawn to the depositor's order. The form was proper, whether it was used for one or all. When would the notice begin to take effect, if at all? After 10, or 20, or what larger number of checks, had been drawn? A form of check appropriate and strictly conforming to the contract does not by repeated use take a sinister appearance. * * *" In National Nu Grape Co. v. Citizens & Southern Nat. Bank, 94 Ga.App. 5, 93 S.E.2d 381, 254 checks totaling over $233,000 were misappropriated over a 4½-year period.

Mercantile's experience and knowledge in the field of trust and probate administration, however extensive, would be no substitute for the facts upon which to base a judgment as to misappropriation, and would not be sufficient to charge it with notice.

We have read the cases cited by appellant and find them either distinguishable on the facts or supporting the minority rule, which we do not recognize.

■ It follows that the petition does not state a claim upon which relief can be granted. In this situation it is immaterial whether it was timely filed, and we do not express ourselves on the limitations question.

Judgment affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.