Dr. Melvin A. CASSEL, Successor Trustee of
Trust A and Trust B under the Will of
George B. Fleischman, Deceased, Appellant,

v.

SECURITY TRUST CO., a Corporation,
Respondent.

No. 51114.

Supreme Court of Missouri,

Division No. 1.

July 12, 1965.

Motion to Remand with Leave to File Amend-
ed Petition or to Transfer to Court
En Banc Denied Sept. 13, 1965.

Lewis, Rice, Tucker, Allen & Chubb,
Samuel H. Liberman, Eugene Gabianelli,
St. Louis, for appellant.

Armstrong, Teasdale, Roos, Kramer &
Vaughan, Edwin S. Baldwin, Bruce E.
Woodruff, St. Louis, for respondent.

HOUSER, Commissioner.

Action by Dr. Melvin A. Cassel, succes-
sor trustee under the will of George B.
Fleischman, deceased, against Security
Trust Company, a banking corporation, to
recover $85,955.

Security filed a motion to dismiss on the
ground that the action is barred by limita-
tions [§ 516.120(1), V.A.M.S., or in the al-
ternative, § 516.120(4) or (5), V.A.M.S.]
and that the petition fails to state a claim
upon which relief can be granted.

The circuit court sustained the motion to
dismiss on the theory that the action is
barred by limitations [§ 516.120(1)], and
dismissed the petition with prejudice.
Plaintiff has appealed from the judgment of
dismissal.

On this appeal both parties have briefed
both points raised in the motion to dismiss.
We pass over the point on limitations, pre-
ferring to consider first the meritorious,
central question in this case: whether the
petition states a claim upon which relief can
be granted.

Plaintiff's first amended petition contained the same allegations of fact made in the first amended petition in plaintiff's action against Mercantile Trust Co., Mo.Sup., 393 S.W.2d 433, decided concurrently herewith, to which reference is made, with these additions:

An allegation that Security Trust Company resulted from a merger of Mutual Bank & Trust Company (referred to in the suit against Mercantile) and Security National Bank Savings & Trust Company, effective May 29, 1958, in which merger Security became liable for the debts and obligations of Mutual.

Allegations that at the time Rosenblum presented to Mutual the first of the checks drawn on Mercantile totaling $60,725 Mutual knew that partial distribution had been made in the Fleischman estate "for in March 1952 Rosenblum as Trustee under Trust A and as Trustee under Trust B had opened accounts with Mutual Bank with initial deposits of Forty Thousand Dollars ($40,000.00) in the Trust A account and Sixty Thousand Dollars ($60,000.00) in the Trust B account"; that at that time Mutual knew of the provisions contained in Fleischman's will, and knew that it was not in the usual and customary practice of probate courts to authorize substantial partial distributions of the assets of an estate until all claims against the estate had been paid, and "knew that on April 11, 1953 and for many years prior thereto Rosenblum individually was heavily indebted to it."

Allegations that on receipt of the check for $2,000 (the first of the items totaling $60,725) Mutual issued its cashier's check payable to Irl B. Rosenblum in that sum and that on receipt of the other checks referred to in that list paid the amount thereof to Rosenblum in cash; that the presentation and the request on April 11, 1953 was such an unusual, irregular and abnormal practice as to arouse on the part of Mutual, in the light of its knowledge and experience, the suspicion that Rosenblum intended to misappropriate the proceeds of the check; that Mutual should have either refused to cash the check or made appropriate inquiry, and the presentation of two additional checks in the same amount on April 14 and 16, 1953 made it mandatory to make appropriate inquiry before cashing said checks.

Allegations that Mutual "had notice on April 11, 1953, prior to its issuing its cashier's check to Rosenblum individually in exchange for a check drawn by Rosenblum as Executor payable to himself individually, that Rosenblum intended to misappropriate the same, and that in the alternative Mutual had notice of the intended misappropriations not later than April 16, 1953, at which time it had cashed three such checks, each in the amount of $2,000.

An allegation that commencing August 3, 1953, and ending November 12, 1954, Rosenblum presented checks drawn on Mutual payable to cash, signed by him "Irl B. Rosenblum Trustee U/W of G. B. Fleischman, Trust B," totaling $25,040, as follows:

| Date | Amount |
|---|---|
| 8/3/53 | $2,000.00 |
| 8/4/53 | 1,600.00 |
| 8/11/53 | 1,000.00 |
| 8/17/53 | 350.00 |
| 3/2/54 | 2,000.00 |
| 3/5/54 | 2,000.00 |
| 3/11/54 | 2,000.00 |
| 3/12/54 | 2,000.00 |
| 3/15/54 | 2,000.00 |
| 3/17/54 | 2,000.00 |
| 3/22/54 | 2,200.00 |
| 3/24/54 | 2,000.00 |
| 3/30/54 | 500.00 |
| 4/20/54 | 1,500.00 |
| 4/22/54 | 1,800.00 |
| 11/12/54 | 90.00 |
| TOTAL . . . | $25,040.00 |

Allegations that on May 5, 1955 and October 24, 1955 Rosenblum presented to Mutual checks payable to cash for $150 and $40, respectively, signed by him as trustee of Trust A under the Fleischman will; that Mutual paid these aforesaid checks in cash

and charged the trust account therewith, with actual knowledge of the terms of the trust instrument; actual knowledge that the beneficiary of the trust estate entitled to receive the income therefrom was Bertha Fleischman, and that under Trust A and Trust B the trustee could not lawfully use the trust funds except to pay beneficiaries, expenses of administration and commissions of the trustee or for the making of investment on behalf of the trust estate; actual knowledge that payments to the beneficiary Bertha Fleischman were not made in cash, but by check, that payments of commissions were made to Rosenblum by check only at regular intervals and in odd amounts, and that expenses of administration and investments which were proper were not ordinarily, normally or customarily made by payment in cash, but by check; that on August 3, 1953, when it cashed the first check on the Trust B account, Mutual had actual knowledge that in the 3 months preceding Rosenblum had withdrawn from the executor account checks payable to himself in the aggregate sum of $21,500 but nevertheless from August 3–17, 1953 Mutual paid Rosenblum on 4 separate checks payable to cash the sum of $4,950, and when a fifth check was presented on March 2, 1954 Mutual had actual knowledge that Rosenblum had withdrawn from the executor account on checks payable to himself the additional sum of $14,950 but nevertheless paid him in cash in March, 1954 on 9 separate checks the sum of $16,500 and in April on 2 separate checks the sum of $3,300; that on May 5, 1955 when it paid Rosenblum $150 on the check above referred to it had actual knowledge that from April 11, 1953 to that date Rosenblum had drawn on the executor account, on checks payable to himself, the sum of $54,100 and on the Trust B account on checks payable to cash the sum of $25,040.

▮ Mutual's (and therefore Security's) liability for amounts it permitted Rosenblum to withdraw from the two accounts in which Mutual was the depository is governed by the same considerations held decisive in Cassel v. Mercantile Trust Company, supra.

The following additional facts alleged in the petition against Security do not change the result: that Rosenblum had opened accounts with Mutual as trustee with initial deposits of $40,000 and $60,000, respectively; that Mutual knew of the provisions contained in the will and had actual knowledge of the terms of the trust instrument; knew that the beneficiary of the trusts was Bertha Fleischman; knew that it was not customary to make large partial distributions of the assets of estates until all claims against the estate had been paid, and that Rosenblum was individually and for many years had been heavily indebted to Mutual. While these allegations were pertinent they are lacking in particularity and when the pleading is read in its totality it fails as a matter of law to project a set of facts and circumstances so suspicious as to permit a finding that Mutual's action in cashing the checks, etc. for Rosenblum without inquiry was done in such reckless disregard of the rights of the beneficiaries of the estate and trusts as to amount to bad faith or dishonesty on the part of the bank. It does not allege facts showing Mutual's knowledge that Rosenblum's withdrawals were out of proportion to the needs of the estate or trusts; does not state the provisions of the will and trust which might show the sums required to pay the amounts due the beneficiary under the trust or the beneficiaries of the estate; does not state that in fact all claims against the estate had been paid; does not show what investments were made on behalf of the trust estate, or that none were made, or that Rosenblum was delinquent in payments due on his indebtedness, or that Rosenblum had a bad record or bore a bad reputation as a debtor or fiduciary.

▮ Security's liability for issuing to Rosenblum the certificate of deposit for $2,000 and for cashing checks totaling $59,725 presented by Rosenblum, drawn on Mercantile by Rosenblum as executor, payable to himself individually and endorsed by him, while resting upon a different factual basis, presents no essential differ-

ence in principle simply because Security was the *transmitting* bank, and not the depository. In either event a bank privy to and participating in a breach of trust by a fiduciary with knowledge, actual or constructive, of his intention to misappropriate, would be bound to make good the amounts the bank disbursed to the erring fiduciary. Finding no Missouri case involving the liability of the transmitting bank, appellant relies on Bischoff v. Yorkville Bank, 218 N.Y. 106, 112 N.E. 759. The facts in that case are different and distinguishable, for there the transmitting bank received the trust funds in payment of the fiduciary's personal obligation to the bank, thereby acquiring an advantage or benefit directly through the diversion of the funds, a factor notably absent here. We do not, however, dispute general statements in that opinion indicating that a bank is liable which joins in a diversion in which it is not interested, with actual notice (or where circumstances reasonably support the sole inference) that a misappropriation is intended. Appellant's difficulty is that his petition simply does not state facts which invoke these rules.

For the reasons stated in Cassel v. Mercantile Trust Company plaintiff has not alleged facts putting Security on inquiry, or showing that Security's actions without inquiry amount to such a reckless disregard of the rights of the beneficiaries of the estate and trusts as to amount to bad faith or dishonesty, either as to the $25,040 or the $60,725.

We reserve on the limitations question for the same reason indicated in the Mercantile opinion.

Judgment affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.